**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jesse Ray PIPKINS, Defendant-Appellant.**

**No. 75–2331.**

United States Court of Appeals, Fifth Circuit.

March 11, 1976.

Roland Dahlin, II, Federal Public Defender (Court-appointed), Charles S. Szekely, Jr., Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM and GEWIN, Circuit Judges, and MEHRTENS, District Judge.

GEWIN, Circuit Judge:

After trial by jury appellant Jesse Ray Pipkins was convicted on both counts of an indictment charging him with possession of stolen mail in violation of 18 U.S.C. § 1708 and forgery of a United States Treasury check in violation of 18 U.S.C. §§ 2 and 495. Pipkins contends that his conviction should be reversed because of two alleged errors: (1) the trial court's refusal to apply the attorney-client privilege to the testimony of a handwriting expert previously employed by defense counsel, but called as a prosecution witness; and (2) the trial court's refusal to charge the jury on the issue of circumstantial evidence in accordance with his requested instruction. We affirm.

Both counts in the indictment arose from a single incident. A Veterans Educational Assistance check, made payable to Milton J. Chambers, was issued on June 2, 1973. The check was sent to Chambers at his home address in Houston, Texas. Chambers never received the check; without his permission someone endorsed and cashed it at the Frances Food Market. The proprietor of that store was unable to recall the identity of the person who cashed the check.

Postal Inspector James C. Crowley was assigned to investigate the matter. In the course of his investigation, he interviewed appellant Pipkins. After apprising Pipkins of the purpose of the investigation and of his *Miranda* rights, the inspector requested Pipkins to submit a handwriting exemplar. Pipkins assented and signed a form waiving his *Miranda* rights. On a government form Pipkins provided a handwriting specimen; he also acknowledged that he had freely and voluntarily given the samples after having been advised of his rights. In addition, in accordance with Crowley's instructions, Pipkins wrote Chambers' name and address on ten cards. On each card Pipkins acknowledged that the handwriting specimen was given freely and voluntarily.

Subsequently the grand jury returned an indictment against Pipkins, and the Federal Public Defender for the Southern District of Texas was appointed to represent him. In preparing Pipkins' defense, the Public Defender's office retained a handwriting expert, Albert Somerford. At the direction of defense counsel, Somerford met with Pipkins at the Public Defender's office. A representative of the United States Attorney's office hand delivered the forged check and the handwriting samples that Pipkins had given to the government. The expert made a preliminary comparison of the handwriting on the check with that on the government samples. He then requested Pipkins to furnish him further handwriting samples; afterwards he submitted a written report.

Somerford's analysis incriminated Pipkins, and the defense decided not to call the expert at trial. The government filed a motion for discovery, pursuant to F.R.Crim.P. 16(c), seeking inspection of any scientific tests, and the reports thereof, concerning appellant's handwriting. Appellant responded that although he had a written handwriting analysis report, he did not intend to introduce the report at trial, and that it was not discoverable under F.R.Crim.P. 16(c). The government's motion for discovery and inspection was denied.

At trial the *government* called Somerford as an expert witness. Outside the presence of the jury defense counsel objected to the government's calling of Somerford. Defense counsel argued that Somerford was an agent of defense counsel and that the attorney-client privilege applied to his testimony. Before ruling on the objection, the court directed the government to offer Somerford's testimony.

On direct examination Somerford stated that it was his opinion that the signature on the back of the endorsed check

matched the handwriting specimens Pipkins had given Inspector Crowley. On cross-examination by defense counsel, the following testimony was elicited:

Q. Mr. Somerford, when Mr. Pipkins was at your office did you take other samples of writing and letters from him?

A. Yes, sir.

Q. Was that before or after you examined the government samples in relation to the check?

A. That was after I made the preliminary examination of Government Exhibit 1 writing [the forged check] with that in Government Exhibit 5 [the handwriting exemplars].

\* \* \* \* \* \*

Q. Were the subsequent samples that you took necessary, and did they form a vital part of your opinion that the signature of Milton Chambers was written by the same person as contained on the government's samples?

A. I must say that they didn't contribute markedly to the examination, beyond the samples contained in Government Exhibit 5.

\* \* \* \* \* \*

Q. So you would be able to testify, then, based merely on the exhibits, without any reference, or being able to wipe from your mind the subsequent samples that you took?

A. Well, I would say that, yes. . .

After this testimony, the court overruled the appellant's objection with the reser-

vation that the government not comment upon the fact of Somerford's previous employment by defense counsel. The jury was summoned, and Somerford repeated his incriminating testimony.[1]

I

Pipkins contends that the trial court's refusal to apply the attorney-client privilege to the testimony of Somerford was reversible error. He argues that the handwriting specimens which Pipkins gave Somerford, as well as Somerford's report of his findings, were privileged communications.

 The attorney-client privilege prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice. *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir. 1974); *Clanton v. United States,* 488 F.2d 1069, 1071 (5th Cir. 1974), *cert. denied,* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974); *United States v. Kendrick,* 331 F.2d 110, 113 (4th Cir. 1964); *J. P. Foley & Co. v. Vanderbilt,* 65 F.R.D. 523, 526 (S.D.N.Y. 1974). In appropriate circumstances the privilege may bar disclosures made by a client to non-lawyers who, like Somerford, had been employed as agents of an attorney. *United States v. Kovel,* 296 F.2d 918, 921 (2d Cir. 1961); *Burlington Industries v. Exxon Corp.,* 65 F.R.D. 26, 40 (D.Md.1974); *United States v. Schmidt,* 360 F.Supp. 339, 346 (M.D.Pa. 1973); 8 Wigmore, Evidence (McNaughton rev. 1961) § 2301.

 The attorney-client privilege, however, is not a broad rule of law which interposes a blanket ban on the

1. The government also offered the testimony of a fingerprint expert who testified that a latent fingerprint on the forged check matched the defendant's left thumbprint. The defense subsequently stipulated to the fingerprint. Pipkins took the stand in his own defense. He testified that he had seen and handled the check during a card game with Ernest Middleton (alias Johnny Coffey), but that he had returned the check to Middleton after a cursory examination. Middleton, called as a witness

by the court, freely admitted having forged and cashed stolen government checks on several occasions. He further testified that on several occasions he had been in the company of the appellant when the latter was in possession of stolen Treasury checks. Middleton denied, however, that he had ever had in his possession the check made payable to Chambers or that he had ever given Pipkins that check.

testimony of an attorney. To the contrary,

. . . the privilege stands in derogation of the public's "right to every man's evidence", 8 Wigmore [McNaughton rev. ed. 1961] § 2192 at 70, and as "an obstacle to the investigation of the truth," *id.,* § 2291 at 554; thus, as Wigmore has said, "It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle."

*In re Horowitz,* 482 F.2d 72, 81 (2d Cir. 1973), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). *See also United States v. Goldfarb,* 328 F.2d 280, 282 (6th Cir. 1964), *cert. denied,* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964); *Hogan v. Zletz,* 43 F.R.D. 308 (N.D.Okl. 1967), *aff'd sub nom., Natta v. Hogan,* 392 F.2d 686 (10th Cir. 1968). The privilege does not embrace everything that arises out of the existence of an attorney-client relationship. *United States v. Bartone,* 400 F.2d 459, 461 (6th Cir. 1968), *cert. denied,* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969); *United States v. Goldfarb, supra; Burlington Industries v. Exxon Corp., supra.* By the same token,

"[n]othing in the policy of the privilege suggests that attorneys, simply by placing accountants, scientists or investigators on their payrolls and maintaining them in their offices, should be able to invest all communications by clients to such persons with a privilege the law has not seen fit to extend when the latter are operating under their own steam.

*United States v. Kovel, supra,* 296 F.2d at 921.

■ It is vital to a claim of privilege that the communication have been made and maintained in confidence. *United States v. Hodgson, supra; Wirtz v.*

*Fowler,* 372 F.2d 315, 332 (5th Cir. 1966); *United States v. Kovel, supra;* 8 Wigmore, *supra,* § 2311. Thus courts have refused to apply the privilege to information that the client intends his attorney to impart to others, *United States v. Cote,* 456 F.2d 142, 144 (8th Cir. 1972); *Fratto v. New Amsterdam Fire Ins. Co.,* 359 F.2d 842, 844 (3d Cir. 1966); *Colton v. United States,* 306 F.2d 633, 638 (2d Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), or to communications made in the presence of third parties, *United States v. Blackburn,* 446 F.2d 1089, 1091 (5th Cir. 1971), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); *Burlington Industries v. Exxon Corp., supra,* 65 F.R.D. at 37; *Cafritz v. Koslow,* 83 U.S.App.D.C. 212, 167 F.2d 749, 751 (1948).

■■ Pipkins failed to establish that the handwriting samples that he gave Somerford were confidential. One's style of handwriting is not an intrinsically confidential attribute;[2] and there is nothing in the record that indicates that Pipkins subjectively intended his style of handwriting to be confidential. Defense counsel attempted to establish the requisite element of confidentiality by showing that Somerford had been directed to make no comment concerning the result of his handwriting analysis to anyone other than defense counsel. This argument overlooks the fact that appellant himself had already voluntarily disclosed his handwriting style to the government before he was ever interviewed by Somerford. Any hope of confidentiality was thus an impossibility from the outset. We hold, therefore, that Pipkins failed to establish that his handwriting samples were *confidential* communications within the ambit of the attorney-client privilege.

■ Moreover, even assuming, *arguendo,* that the samples of handwriting that

2. As a general rule, identifying physical characteristics such as one's style of handwriting, readily observable by anyone, are not subject to the attorney-client privilege. 8 Wigmore, Evidence (McNaughton rev. 1961) § 2306. Nor is one's style of handwriting protected by

the Fifth Amendment. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. McGann,* 431 F.2d 1104 (5th Cir. 1970), *cert. denied,* 401 U.S. 919, 91 S.Ct. 904, 27 L.Ed.2d 821 (1971).

**564**

Pipkins gave Somerford were privileged communications, there was no error in admitting the expert's testimony. Somerford was asked to compare the handwriting on two government exhibits; he was not questioned about either the subsequent samples or the results of the test conducted at the behest of defense counsel. Consequently, the questions propounded Somerford did not call for the revelation of the substance of a confidential communication; his testimony was confined to nonconfidential matters. Somerford stated that he would be able to form his opinion without any reference to the subsequent samples. Therefore, Somerford's opinion about the handwriting on the government exhibits was not "inextricably intertwined with communications which passed between him and his client," and we do not confront testimony that necessarily "comprehended conclusions drawn in the course of an association that is uniquely regarded in the law." *United States v. Kendrick, supra,* 331 F.2d at 115 (concurring opinion). Accordingly, appellant's first contention is without merit.

**II**

At the close of the evidence, defense counsel requested the following charge on circumstantial evidence:

> If you find that all of the evidence against the defendant is circumstantial evidence, then you must find that all of the inferences to be drawn from this evidence are consistent with the guilt of the defendant and inconsistent with every reasonable hypothesis of innocence in order to convict. Otherwise you must acquit.

Although the trial judge declined to give the requested instruction, he did instruct the jury on the standards for reasonable doubt; and the appellant did not object thereto. In *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the Supreme Court held that where the jury is properly instructed on the standards for reasonable doubt, an additional instruction on circumstantial evidence is confusing and incorrect.

This court has consistently followed *Holland* and held that the instruction requested by Pipkins is not required where there were adequate instructions on reasonable doubt. *United States v. Rodriguez,* 523 F.2d 738 (5th Cir. 1975); *United States v. Squella-Avendano,* 478 F.2d 433 (5th Cir. 1973); *United States v. Hansbrough,* 450 F.2d 328 (5th Cir. 1971).

Affirmed.