THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BETTY JANE MUSKGRAVE, Defendant-Appellant.

Fourth District   No. 14704

Opinion filed June 16, 1978.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (Robert C. Perry and Denise Maria Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant Betty Jane Muskgrave was charged in the circuit court of Coles County with the offense of felony theft in that she "knowingly obtained unauthorized control over property of L. E. Boyce * * * intending to deprive said L. E. Boyce permanently of the use of the property," in violation of section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 16—1(a)). After trial by jury, she was found guilty and sentenced to 3 years' probation. She appeals, contending that (1) the State failed to prove that she obtained "unauthorized control"

over the property allegedly stolen, and (2) the trial court erroneously instructed the jury on the law relating to auctions.

The evidence at trial showed that Dwayne Bauer conducted an auction at Mattoon on February 6, 1976. Prior to the start of the auction, an announcement was made informing those attending that the terms of the sales were "cash"; that when a person bought an item, it was theirs; and that payment must be made before items could be removed. The evidence was disputed as to whether defendant attended the auction. She testified that she was in Champaign at the time. Other evidence identified her as a woman who was present throughout, who had registered under the name of Betty Tompkins and who was the highest bidder on the items alleged to have been stolen. Some evidence was also introduced that this woman had bid an unusually high price for these items. Evidence also indicated that no payment was made for the items bought by this woman but that an assistant to the auctioneer permitted her to carry away many of the items. Defendant does not dispute that the evidence was sufficient for the jury to have determined that she was the woman in question.

Section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 16—1) provides in part that a person "commits theft when he knowingly: (a) Obtains or exerts unauthorized control over property of the owner; or (b) Obtains by deception control over property of the owner; or * * * (d) Obtains control over stolen property knowing the property to have been stolen by another * * *" with one of the mental states set forth in the section.

Defendant maintains that the woman identified as her could not have been guilty of obtaining unauthorized control of the property alleged to be stolen. Section 2—328(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—328(2)) states that an auction sale of personal property is complete when the "auctioneer so announces by the fall of the hammer or in other customary manner." In *Diefenbach v. Gorney* (1968), 93 Ill. App. 2d 51, 234 N.E.2d 813, the court stated that under the foregoing provisions of the Code, as under prior law, title to personal property sold at auction passes to the purchaser, subject to the seller's lien, upon the fall of the auctioneer's hammer. Defendant maintains that the woman who bid upon the property in question at the auction had title from the minute the property was struck off to her and possession when the property was handed to her by an assistant auctioneer who, by virtue of his position, was an agent of the selling owner. She maintains that for these reasons that woman's control was authorized even though her rights in the property might be set aside in a civil action for fraud.

The State, on the other hand, contends that the criminal law of theft is not governed by civil distinctions between void and voidable title but that

control over property of another that is obtained by deception is "unauthorized control" within the meaning of section 16—1(a). The defendant does not dispute that a charge under section 16—1(b) (obtaining control of property by deception) would be appropriate under the evidence introduced here, but maintains that a section 16—1(a) charge for obtaining "unauthorized control" is not supported by the evidence.

The heart of the State's argument in this respect is its theory that section 16—1(a) conduct encompasses all of the conduct listed separately under section 16—1. It cites the dictum in *People v. Dziak* (1975), 30 Ill. App. 3d 859, 333 N.E.2d 582 (abstract) where the court stated that a section 16—1(a) charge made in conjunction with one of the mental states enunciated in section 16—1 covers all forms of theft. The State also calls attention to the Committee Comments to section 16—1 which state that section 16—1(a) covers "the great majority of bad check cases." Ill. Ann. Stat., ch. 38, par. 16—1, Committee Comments, at 18 (Smith-Hurd 1977).

■■ We agree at least to the extent that one who obtains control over property of another by deception obtains "unauthorized control" over that property within the meaning of section 16—1(a). To obtain control by deception is theft (section 16—1(b)). Property which is obtained by theft is stolen property (Ill. Rev. Stat. 1975, ch. 38, par. 15—6). In *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770, the supreme court ruled that section 16—1(d) conduct (obtaining control over property known to be stolen) is included in section 16—1(a) conduct because it is exerting unauthorized control over property. Thus control over stolen property is unauthorized control. Accordingly one who obtains that control by committing the larcenous act of deception obtains unauthorized control within the meaning of the Criminal Code.

■■ The evidence here that defendant bought under an assumed name, bid unduly high prices and then left without paying are ample evidence that she bid without intending to pay and thus obtained unauthorized control over the property by deception.

The trial judge analyzed the law involved somewhat differently than we have. He concluded that the defendant would have obtained unauthorized control over the property only if title never passed to her because she did not make a bona fide bid in that she did not intend to make payment. He reasoned that by analogy to section 2—328(4) of the Commercial Code, which permits a buyer to avoid a sale if the seller has improperly made a bid, other bids not made in good faith are also not valid bids. The judge also reasoned that if the high bidder had no intention of making payment, a sale would not take place because there would be no meeting of the minds. Pursuant to his theory, the trial judge,

over defendant's objection, gave the jury several court's instructions. Court's instruction No. 2 stated,

> "In a sale at auction a bid which is made for any purpose other than to state a price which the bidder is willing to pay to purchase the goods auctioned is not an offer to purchase the goods, and the acceptance of such offer by the auctioneer does not complete a sale, and title does not pass to the bidder."

We need not decide whether this instruction correctly stated the law because of our determination that the question of whether defendant obtained "unauthorized control" of the property did not depend upon passage of title. If the jury believed the defendant to have been the woman making the purchase and if they believed she did so without intending to pay and took the goods without so paying, they should have found her guilty. The instruction was not prejudicial to the defendant.

The court also gave the following instruction on its own motion:

> "If you find from the evidence that the Defendant did not obtain control over the goods in question, you must find the Defendant not guilty.
>
> If you find from the evidence that the Defendant did obtain control over the goods in question and that, at the time the Defendant obtained control of such goods, title to the said goods had passed to the Defendant, you must find the Defendant not guilty."

Any error in this instruction was favorable to the defendant.

The defendant complains that the court erred in refusing her instruction No. 1. The substance of that instruction was included in court's instruction No. 2.

Accordingly, we affirm.

Affirmed.

CRAVEN and REARDON, JJ., concur.