THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLIFFORD J. FOWLER, Defendant-Appellant.

Fourth District   No. 15240

Opinion filed June 13, 1979.

Richard J. Wilson and Jeff Justice, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Marc D. Towler and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his conviction of theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1) upon jury verdict and the imposed sentence of three years. Upon appeal it is urged that the evidence was insufficient to support the conviction of the offense charged; that it was error to introduce certain handwriting samples which defendant had given to defense counsel for

the purpose of examination by an expert witness and which were thereafter placed in evidence when the expert testified for the prosecution; that defendant was denied a fair trial by reason of the prosecution's prejudicial argument, and that the presentence report was insufficient in that it failed to include a plan based upon local resources as an alternative to imprisonment.

The information charged:

"[O]n or about June 14, 1977 CLIFFORD J. FOWLER committed the offense of Theft in that he knowingly by deception gained unauthorized control over the property of * * * to-wit: United States currency, having a value in excess of $150, and of the value of $270, with the intent to permanently deprive the owner of the use or benefit of said property, in violation of Illinois Revised Statutes, Chapter 38, Section 16—1."

Defendant, as C. J. Fowler, was the payee of a check issued by the State of Illinois upon the unemployment insurance account. The check was dated May 13, 1977, and shortly thereafter the check endorsed "Clifford J. Fowler" was presented at a food market and currency in the stated amount was delivered to the endorsing individual. No testimony identified defendant as the person presenting the check. Defendant testified and denied that he had endorsed the check or received the face amount delivered at the market.

It is admitted that on June 13, 1977, defendant, as Clifford J. Fowler, executed an affidavit of his nonendorsement of the check. The affidavit identified the check by number and date. As the result of this procedure, the account of the market which cashed the check was charged back with the face amount and was thus deprived of $270.

Section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1) provides, in pertinent part:

"A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner; or

(b) Obtains by deception control over property of the owner; or
* * *, and

(1) Intends to deprive the owner permanently of the use or benefit of the property; and

(2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit."

On appeal, defendant for the first time raises the issue that assuming,

arguendo, that defendant endorsed the check and received the money, the information does not validly charge theft under the statute. While the information did not specify a subparagraph, it is contended that the information actually charged theft under section 16—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(b)), where the accused "Obtains by deception control over property of the owner," and that such is a separate and distinct offense from section 16—1(a) where the accused "Obtains or exerts unauthorized control over property of the owner."

It is noted that section 16—1(b) uses only the word "Obtains," while section 16—1(a) employs the words "Obtains or exerts." The theme argued is that while the exerting of control may be included or be considered synonymous with retention of control, the allegation "Obtains," standing alone, does not encompass retention but is limited to the act of acquiring. It is contended that such is a significant difference for the reason that the defendant obtained the money by means of a valid endorsement of a valid check and that any act of deception shown by the evidence would be the signing of the affidavit of nonendorsement some days later. The conclusion argued is that the retention of the proceeds of the check by the act of signing the affidavit would come within the language of section 16—1(a), *i.e.*, "exerts unauthorized control," but would not constitute the act "Obtains by deception." From such premise, it is concluded that the act of deception must occur contemporaneously with the obtaining of the property but that here the evidence shows the contrary with a result that there is no valid charge of theft.

We note that section 16—1(b) uses the language "control over property" rather than "unauthorized control over property" as is provided in section 16—1(a). If there be an intended distinction in the language used, we conclude that it renders ineffective the argument that there was no theft when the money was obtained through a valid instrument upon a valid endorsement, for by such distinction the language of section 16—1(b) contemplates the offense where there is an initial authorized possession or control obtained.

Article 15 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 15—1 *et seq.*) states definitions of the terms used in the statutes concerning offenses against property. With regard to the several terms placed in issue by the argument of defendant, we consider the following definitions. As to the word "Obtain", section 15—7 provides:

"(a) In relation to property, *to bring about a transfer of interest* or possession, whether to the offender or to another * * *." (Emphasis added.)

Section 15—8 provides:

"[T]he phrase 'obtains or exerts control' over property, includes

but is not limited to the taking, carrying away, or the sale, conveyance, or transfer of title to, *or interest in,* or possession of property." (Emphasis added.)

In section 15—4, deception is defined as meaning knowingly to:

"(a) Create or confirm another's impression which is false and which the offender does not believe to be true; or

(b) Fail to correct a false impression which the offender *previously* has created or confirmed; or

(c) Prevent another from acquiring information pertinent to the disposition of the property involved; or

\* \* \*." (Emphasis added.)

Within the definition of the word "Obtain" the act of signing the affidavit of nonendorsement did bring about a "transfer of the interest" of the proprietors of the market which cashed the check upon the presentation and endorsement within the language of section 15—7. In the context of a failure to correct a false impression "Which the offender previously has created or confirmed," or in the context of acts which "Prevent another from acquiring information pertinent to the disposition of the property involved," the act of deception need not be contemporaneous with obtaining possession.

A conclusion that defendant's argument based upon the issue as framed is without merit is supported upon the authority of *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770; *People v. Muskgrave* (1978), 60 Ill. App. 3d 742, 377 N.E.2d 595; and *People v. Gray* (1978), 61 Ill. App. 3d 243, 377 N.E.2d 1311, *appeal denied* (1978), 71 Ill. 2d 611.

In *Marino,* defendants were charged with theft by "obtaining and exerting unauthorized control" under section 16—1(a) when they were arrested while in possession of property stolen some six months before. It was argued that the proper charge was under section 16—1(d), commonly termed "receiving stolen property." That opinion determined:

"This circumstance does not render the indictment invalid, however. The conduct specifically proscribed in subsection (d), often termed 'receiving stolen property', is not a separate offense in Illinois. It is included within subsection (a), which describes as an offender, 'A person [who] knowingly: (a) Obtains or *exerts* unauthorized control over property of the owner.' " 44 Ill. 2d 562, 576, 256 N.E.2d 770, 778.

We note that section 16—1(d) includes the word "obtain" but excludes the word "exert." It thus appears that the supreme court has rejected the distinction between the words "obtain" and "exert" as employed in section 16—1, and as has been argued here. That opinion may be interpreted to state that the several subsections of section 16—1 do not undertake to create a series of separate offenses, but rather to

create a single offense of theft which may be performed in a number of ways.

In *Muskgrave*, defendant purchased property at an auction where it was announced that the sale was for cash and that title passed when the item was struck off. Defendant made the highest bid and obtained possession of the property but took it away without paying. She was convicted of theft under section 16—1(a) and upon appeal asserted that there was a failure to prove her "unauthorized control" for the reason that title had passed with her bid and that possession had passed to her when the clerk handed her the property. She contended that the control was authorized even though her rights might be set aside in a civil action for fraud. Defendant did not dispute that the evidence showed theft by deception under section 16—1(b), but argued that the evidence showed no "unauthorized control" under section 16—1(a). This court affirmed stating that obtaining property by deception was the obtaining of "unauthorized control" within the meaning of section 16—1(a), saying:

> "In *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770, the supreme court ruled that section 16—1(d) conduct (obtaining control over property known to be stolen) is included in section 16—1(a) conduct because it is exerting unauthorized control over property. Thus control over stolen property is unauthorized control. Accordingly one who obtains that control by committing the larcenous act of deception obtains unauthorized control within the meaning of the Criminal Code." (60 Ill. App. 3d 742, 744, 377 N.E.2d 595, 597.)

It is significant that that opinion concluded that the question of whether the defendant "obtained 'unauthorized control' of the property did not depend upon passage of title." 60 Ill. App. 3d 742, 745, 377 N.E.2d 595, 598.

Again, in *People v. Gray* (1978), 61 Ill. App. 3d 243, 245, 377 N.E.2d 1311, 1313, *leave denied* (1978), 71 Ill. 2d 611, this court followed *Marino* in concluding that sections 16—1(a) and 16—1(d) did not charge separate offenses. That opinion stated:

> "In *People v. Marino* (1970), 44 Ill. 2d 562, 576, 256 N.E.2d 770, 778, our supreme court held that the conduct proscribed in section 16—1(a) and (d)(1) does not involve separate offenses. Rather, any distinction between the conduct proscribed by the statute is of a historical nature."

In the light of these authorities, we can find no reason to conclude that section 16—1(b) must charge a separate and distinct offense. We note that section 16—1.1 of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 16—1.1) provides as a rule of evidence:

> "It shall be prima facie evidence that a person 'knowingly

> obtains or exerts unauthorized control over property of the owner when a lessee of the personal property of another fails to return it to the owner within 30 days after written demand from the owner for its return."

This provision of the statute expressly contemplates that one may lawfully obtain possession but that a subsequent act may constitute the obtaining of "unauthorized control over the property of the owner" for purposes of theft. We further note that article 17 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 17—1 *et seq.*), provides a separate category of offenses in the obtaining of possession or control of property "with intent to defraud."

■■ Upon such considerations, we conclude that a theft may be committed within the meaning and purport of section 16—1 of the Criminal Code even though the deception is not contemporaneous with the obtaining of lawful control or possession of the property of another.

Here, the manner of charging the offense did not mislead the defendant or deprive him of adequate notice of the nature of the charge for he defended solely upon the contention that he did not endorse the check in evidence or receive the money. *People v. Gray* (1978), 61 Ill. App. 3d 243, 377 N.E.2d 1311.

Shortly after arrest, defendant had supplied the police samples of his handwriting executed in many varied forms and ways. Defendant procured the court's appointment of a handwriting expert witness. Upon his attorney's suggestion, defendant prepared 10 exemplars of his signature which were forwarded to the witness. Defendant determined not to call the witness but the latter retained the specimens. The witness examined the specimens supplied to the police, as well as the retained specimens of defendant's signature and testified for the prosecution.

Prior to trial, defendant made a motion to bar the testimony of the expert in so far as it might be based upon the exemplars which defendant's attorney had transmitted. It was urged that the exemplars were a matter of attorney-client privilege, and it is here urged that it was reversible error to deny the motion. No claim of constitutional privilege is asserted.

■ The issue is whether defendant's act of supplying to his attorney the requested signature exemplars for comparison by the expert witness comes within the ambit of the attorney-client privilege.

In *People v. Adam* (1972), 51 Ill. 2d 46, 48, 280 N.E.2d 205, 207, the supreme court discussed the privilege, stating:

> "The essentials of its creation and continued existence have been defined as follows: '(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence

(5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.' 8 Wigmore, Evidence, sec. 2292 (McNaughton Rev. 1961)."

In *Fisher v. United States* (1976), 425 U.S. 391, 411, 48 L. Ed. 2d 39, 56, 96 S. Ct. 1569, 1581, it was said:

"When an accused is required to submit a handwriting exemplar he admits his ability to write and impliedly asserts that the exemplar is his writing. But in common experience, the first would be a near truism and the latter self-evident. In any event, although the exemplar may be incriminating to the accused and although he is compelled to furnish it, his Fifth Amendment privilege is not violated because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege."

In such context, handwriting exemplars, as here, are not deemed to be communicative in nature. See Annot., 43 A.L.R.3d 653, 663 (1972).

Supreme Court Rule 413 (58 Ill. 2d R. 413), provides for discovery or disclosure by a defendant to the prosecution. As quoted in part, it provides:

"(a) The person of the accused. Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, a judicial officer may require the accused, among other things, to:

\* \* \*

(viii) provide a sample of his handwriting; and

\* \* \*

(c) Medical and scientific reports. Subject to constitutional limitations, the trial court shall, on written motion, require that the State be informed of, and permitted to inspect and copy or photograph, any reports or results, or testimony relative thereto, of physical or mental examination or of *scientific tests, experiments* or *comparisons*, or any other reports or statements of experts which defense counsel has in his possession or control, except that those portions of reports containing statements made by the defendant may be withheld if defense counsel does not intend to use any of the material contained in the report at a hearing or trial." (Emphasis added.)

Within that Rule the report of the appointed expert witness to the defendant was discoverable upon motion by the prosecution. It appears intrinsic to the Rule that such report or comparison would contain the data upon which the report or comparison was founded. Fortuitously, the discovery procedure was not required in this case.

It is inherent in the Rules pertaining to criminal discovery that tests or comparisons by experts are not the subject of an attorney-client privilege.

There are no "statements" by the defendant to the expert within the limitations of Rule 413.

In *Fisher v. United States* (1976), 425 U.S. 391, 48 L. Ed. 2d 39, 96 S. Ct. 1569, certain taxpayers delivered papers and records to their accountants and attorneys. A summons to produce was directed to the attorneys and the issue was whether such documents were required to be disclosed. While the parties argued the issue in the context of the Fifth Amendment privilege, the court concluded that the issue was properly determined in the framework of the attorney-client privilege. The opinion states the rationale of the attorney-client privilege, saying:

> "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged. 8 J. Wigmore, Evidence, §2292, (McNaughton rev. 1961) (hereinafter Wigmore); McCormick §87, p. 175. The purpose of the privilege is to encourage clients to make full disclosure to their attorneys. 8 Wigmore, §2291, and §2306, p. 590; McCormick, §87, p. 175, §92, p. 192; [citations]. As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice. However, since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege. [Citations.] This Court and the lower courts have thus uniformly held that pre-existing documents *which could have been obtained by court process* from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice. [Citations.] *The purpose of the privilege requires no broader rule.* Pre-existing documents obtainable from the client are not appreciably easier to obtain from the attorney after transfer to him. Thus, even absent the attorney-client privilege, clients will not be discouraged from disclosing the documents to the attorney, and their ability to obtain informed legal advice will remain unfettered. It is otherwise if the documents are not obtainable by subpoena *duces tecum* or summons while in the exclusive possession of the client, for the client will then be reluctant to transfer possession to the lawyer unless the documents are also privileged in the latter's hands. Where the transfer is made for the purpose of obtaining

legal advice, the purposes of the attorney-client privilege would be defeated unless the privilege is applicable. 'It follows, then, that *when the client himself would be privileged* from production of the document, either as a party at common law . . . or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce.' 8 Wigmore, §2307, p. 592. * * *." (Emphasis added.) 425 U.S. 391, 403-04, 48 L. Ed. 2d 39, 51-52, 96 S. Ct. 1569, 1577-78.

While *Fisher* is framed in the context of pre-existing documents, we find the rationale equally applicable to the handwriting specimens prepared by defendant in this case. Under Supreme Court Rule 413 (58 Ill. 2d R. 413), and *Fisher*, defendant would be compelled either to supply the necessary exemplars or the report of the expert witness would be subject to discovery and examination. It appears, therefore, that the defendant is not himself the beneficiary of a privilege in the matter of his handwriting specimens, and accordingly, such are not the subject of attorney-client privilege.

In *People v. Sanders* (1969), 110 Ill. App. 2d 85, 249 N.E.2d 124, it was held that the written statement of a witness given to a defendant's attorney was not privileged as work product of the attorney. Similarly, in *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, the issue was whether a fingerprint expert privately retained by defendant could testify for the prosecution. A violation of attorney-client privilege was urged. The court rejected the argument, saying:

"The claim that Moenssens' testimony violated the attorney-client privilege must likewise be rejected. A witness is not the property of either party to a suit and simply because one party may have conferred with a witness and even paid him for his expert advice does not render him incompetent to testify for the other party. Defendant's argument ignores the fact that the privilege pertains only to *communications* between an attorney and a client and is based upon the confidential nature of such communications. Moenssens' testimony was limited to expert opinion as to the fingerprints and there was no testimony as to any conversations between him and the defendant or defendant's attorney. * * *." 41 Ill. 2d 177, 200, 242 N.E.2d 208, 221.

In *United States v. Pipkins* (5th Cir. 1976), 528 F.2d 559, it was determined upon substantially the same facts that defendant had failed to establish that his handwriting samples were "confidential communications within the ambit of the attorney-client privilege." 528 F.2d 559, 563.

In the light of the stated authorities, we find defendant's argument to be without merit.

■■ Defendant testified as to two prior convictions for forgery and a conviction for the unlawful use of weapons. It is argued that the prosecution indulged in prejudicial argument in commenting upon defendant's credibility. No objection was made to the argument during the trial, and the issue was not raised in a post-trial motion. The issue has been waived for purposes of appeal. *People v. Edwards* (1973), 55 Ill. 2d 25, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438; *People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622.

A presentence report was prepared and filed in the proceedings. It comprised 15 pages, setting forth in penetrating depth the social, economic, educational, and family background of the defendant. It is argued that there was no sufficient compliance with that portion of section 5—3—2(a)(5) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—3—2(a)(5)), providing:

> "when appropriate, a plan, based upon the personal, economic and social adjustment needs of the defendant, utilizing public and private community resources as an alternative to institutional sentencing; and * * *."

■■ No objection to the adequacy of the report was made prior to or at the time of the sentence hearing. A defendant who fails to object in the trial court to the form or depth of a pre-sentence report waives consideration of the point upon review. (*People v. Placek* (1976), 43 Ill. App. 3d 818, 357 N.E.2d 660.) We find, moreover, that the report filed did set forth the alternatives of probation and periodic imprisonment, as well as marital, vocational and economic counselling. The trial court had extensive and adequate presentence information. *People v. Stoutenborough* (1978), 64 Ill. App. 3d 489, 381 N.E.2d 415.

The judgment of the trial court is affirmed.

Affirmed.

GREEN and MILLS, JJ., concur.