(No. 54604.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RICARDO GODINEZ, Appellee.

*Opinion filed April 16, 1982.*

SIMON, J., specially concurring.

Tyrone C. Fahner, Attorney General, of Springfield, and John A. Barra, State's Attorney, of Peoria (John X. Breslin and Rita F. Kennedy, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Thomas Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Ricardo Godinez, pleaded guilty in the circuit court of Peoria County to armed robbery and aggravated kidnaping. He was given a sentence of 24 years' imprisonment for the robbery, and a concurrent sentence of 10 years' imprisonment for the kidnaping. The appellate court held that the sentence of 24 years for robbery was improperly disparate from the 15-year sentence received by a codefendant, Michael Godinez, his brother, who also pleaded guilty to the armed-robbery charge. The court considered that the trial court abused discretion in imposing the disparate sentences and reduced the defendant's sentence to 15 years. (92 Ill. App. 3d

523.) We granted the People's petition for leave to appeal pursuant to Rules 315 and 612 (73 Ill. 2d Rules 315, 612).

An indictment was returned on February 22, 1978, charging the defendant with aggravated kidnaping and armed robbery. Named as codefendants were Michael Godinez (the defendant's brother), Ralph Trevino (the defendant's cousin), Debra Huddleston (to whom the defendant was later married), and Kathy Newman (Debra's sister). On April 10, 1978, the defendant pleaded guilty to both charges.

Before the defendant's pleas were accepted, the People represented the following as a factual basis for the pleas. (73 Ill. 2d R. 402(c)). Ethiel Randle would testify that on February 3, 1978, she went to the Wisconsin Plaza Shopping Center in Peoria around 8:30 p.m. As she left her car, two masked men approached her. One of them had a gun. She was pushed into the front seat of her car, and her car keys were taken. The two men got into her car and drove her to another location in Peoria, where the driver left the car. He returned and she was then blindfolded. She was driven to another location, and the two men led her to an apartment. Her hands and feet were bound, and she remained there for several hours, until the police arrived and freed her. She later identified the defendant as one of the men who had abducted her at the plaza.

Leota Reay would testify that on February 3 she was with the defendant, Michael Godinez and Ralph Trevino in a car in Wisconsin Plaza around 8:30 p.m. The defendant and Trevino left the car, and thereafter she saw a car matching the description of Ms. Randle's auto being driven from the plaza by the defendant.

Kathy Johnson would testify that she was employed at the Convenient Food Mart in Peoria on February 3. At 10 p.m., three masked and armed men entered the store. One had a handgun; the others had knives. They took

money from the cash register and a bottle of liquor from a shelf.

Andrew Koehl would testify that he was a customer in the store at the time of the robbery. He saw the car in which the robbers left, and his description of it matched that of Ethiel Randle's car.

Gary Cullen, a Peoria police officer, would testify that he stopped the above-described auto shortly after the robbery. He approached it, and as he reached in to turn off the engine, the vehicle drove off, brushing him aside.

Officer Richard Jordan of Peoria would testify that he then chased the car and brought it to a halt when his squad car collided with it. The auto was that of Ethiel Randle.

Leota Reay would testify that she accompanied the defendant, Michael Godinez and Trevino to the Convenient Food Mart, and that she remained in the car while they entered the store.

After the People made the above representation, the defendant agreed it was what the prosecution's evidence would show, and the court accepted the plea.

On April 10, 1978, Michael Godinez also pleaded guilty to the armed robbery. The count charging him with kidnaping was dismissed by the State following a plea-bargaining discussion, but there was no agreement or negotiation as to his sentence. Trevino went to trial and was convicted of both armed robbery and aggravated kidnaping.

A joint hearing on sentencing was held for the defendant and Michael on June 2, 1978. At the hearing, presentence reports were filed for consideration by the court. The reports included the prior criminal records of the two men. The defendant, who was 19 years old, had been convicted of burglary and theft in 1976, and he was given a one- to three-year prison sentence. The experience apparently was not an educational one, for after being given an early parole, he was convicted of another burglary in 1977.

For this offense he was given a sentence of 3 to 10 years, and was released on an appeal bond in January 1978. The defendant was sent to a youth farm by juvenile authorities in January 1974, but was relocated because he had been involved in fights with other inmates. In the fall of 1974, the defendant was committed to the Department of Corrections after leaving without authority the youth facility to which he had been sent after being declared a delinquent for possession of a stolen auto.

The defendant obtained a General Educational Development (GED) certificate through the Department. The defendant used alcohol and drugs heavily following his release on the appeal bond in 1978, but he told the pre-sentence investigator that he had reformed himself in this regard, and had turned down a recent offer of drugs.

The presentence report prepared on Michael Godinez noted that he was 21 years old and described his criminal history. He was convicted of unlawful possession of cannabis in 1974 (one-year probation), theft in 1975 (one-year probation and $50 fine), two burglaries in 1976 (five years' probation concurrently), and aggravated assault in 1977. He was given a four-month jail sentence for the assault, and his probation for the burglaries was revoked and he was given one- to three-year concurrent sentences. He, too, received an early parole, having been released in December 1977.

Michael also said that he was a heavy user of alcohol and drugs. It appears that, in February 1977, he had twice attempted suicide. As the defendant had done, he had obtained a GED certificate. Unlike the defendant, however, he had worked at a few jobs outside of the corrections system. He was enrolled in college courses in welding and blueprinting at the time of his last offenses.

Both presentence reports contained excerpts from police reports. One police report set out a statement given to police by Trevino. In it Trevino said that he was

recruited by his cousins (the defendant and Michael) on the day of the offense to accompany them on the robbery. He stated that when he, the defendant and Michael entered the Convenient Food Mart, the defendant went in first and Michael entered last. In the store, the defendant did all the talking, while Michael served as the lookout. Trevino and the defendant emptied the cash registers. Trevino thought that the defendant had a handgun during the robbery. Trevino also stated that, after they left the store, the defendant drove the car.

At the sentencing hearing, the People presented three witnesses to show aggravating circumstances. Leota Reay testified that on February 3 she was with the defendant, Trevino and Michael on Wisconsin Avenue in Peoria. The defendant and Trevino left to steal a car, and returned in an auto with the defendant at the wheel. She said that Michael and she were unaware of the kidnaping of Ethiel Randle until the defendant informed them of it on the way to the apartment where Ms. Randle was to be held. Reay also testified that she saw the defendant, Trevino and Michael enter the Convenient Food Mart, with Michael carrying the gun.

Kathy Newman testified that she was with the defendant, Trevino and Michael on February 3. She stated also that Michael had a gun, and the others had knives.

Officer Gary Cullen testified that he was able to curb the car after the robbery. He stated that he reached into the car to turn off the ignition but it pulled away, throwing him aside. As the car backed away from the officer, it hit another auto, which an elderly man was entering. Officer Cullen's backup squad car gave chase and collided with the defendant's car.

The defendant, to show mitigating circumstances, presented his and Michael's parents. They told the court that their children had talents and career interests, but drugs and alcohol had altered their behavior. The defend-

ant also testified that he had voluntarily used alcohol and drugs on February 3, the day of the crime. Debra Huddleston testified that she observed the defendant consume the drugs and alcohol on that day, and that he "wasn't acting himself."

The trial court sentenced Michael to 15 years' imprisonment on the armed-robbery conviction. The defendant was sentenced to 24 years on the armed robbery and was given a concurrent sentence of 10 years on the aggravated-kidnaping conviction. In both cases, the court stated that it saw no mitigating factors. Rather, the court recognized the presence of aggravating factors in the danger posed to the victims, the defendant's and Michael's serious criminal records, and the need to protect society while deterring others from committing similar offenses. The court said nothing regarding the differences in the sentences imposed on the defendant and his brother for the armed robbery.

Trevino, who had no prior convictions, was sentenced later. He was sentenced to four years for aggravated kidnaping and six years for armed robbery. The sentences were to be served concurrently.

We gave the People leave to appeal from the appellate court's second decision in this case, which was to reduce the defendant's sentence. The first decision by the appellate court is reported at 81 Ill. App. 3d 547. On that appeal, the defendant contended that the trial judge had ignored several mitigating factors. The appellate court held that none of the alleged mitigating circumstances asserted by the defendant required a reduction of sentence. Moreover, the court stated that the disparity between the defendant's sentence and Trevino's was justified, because Trevino had no prior offenses.

The court, however, proceeded to reduce the defendant's sentence because it considered that there was no basis for the disparity between it and Michael's 15-year

sentence. The court found their criminal backgrounds were similar. Also, it concluded that Michael was as culpable or more culpable than the defendant, because two witnesses at the sentencing hearing said that he had carried a gun in the store, while the defendant had only a knife.

This court reversed the judgment of the appellate court and remanded it with directions to reconsider because the standard the court had applied was held improper in *People v. Cox* (1980), 82 Ill. 2d 268. *Cox* held that the proper standard on review of a sentence is whether the trial court abused its discretion. In its review of the defendant's sentence, the appellate court had applied a standard under which a sentence was only presumed to be proper. 81 Ill. App. 3d 547, 550.

Upon the directed reconsideration (92 Ill. App. 3d 523), the appellate court again reduced the defendant's sentence to 15 years. This time the court held that the disparity between the defendant's sentence and Michael's sentence constituted an abuse of discretion. The court stated that disparity in the sentencing of codefendants could be justified by "either a greater relative participation in the offense [citation], or a lesser rehabilitative potential evidenced by a more serious past criminal record [citation], and relative maturity of the defendant." (92 Ill. App. 3d 523, 524.) The appellate court said that its review of the record disclosed no basis for the disparity.

We consider there is a basis for the different sentences imposed, and we reverse the appellate court's judgment reducing the defendant's sentence. We agree with the appellate court that there is no reasonable ground to distinguish between the seriousness of Michael's and the defendant's criminal records, and that the rehabilitative potential of one brother is no more promising than that of the other. Nevertheless, we deem it was error for the appellate court to disturb the sentence imposed by the

trial court because we consider the difference in sentences can be supported by the difference in the roles of the defendant and Michael in the crimes.

The imposing of punishment is one of the most important and sensitive of judicial responsibilities. It is recognized that a court of review, in considering the appropriateness of punishment, must give great weight to the judgment of the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) That court had the first responsibility of determining a proper sentence and of imposing it. Justice Frankfurter perceptively observed that oral argument frequently has a force beyond what the written word conveys. (*Rosenberg v. Denno* (1953), 346 U.S. 271, 272, 97 L. Ed. 1607, 73 S. Ct. 1152 (statement of Frankfurter, J.).) Similarly, presiding in the trial court and personally observing the proceeding may give insights and allow observations beyond what a written record can communicate to a court of review. Here, however, the written record itself makes it clear that the trial court had grounds for distinguishing between the punishments to be imposed on the defendant and on his brother.

An arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated, of course, cannot be defended. A disparity between sentences will not be disturbed, however, where it is warranted by differences in the nature and extent of the concerned defendants' participation in the offense. See, *e.g., People v. Martin* (1980), 81 Ill. App. 3d 238 (disparity permissible where facts indicated that defendant was the leader or instigator in the offense); *People v. Olmos* (1979), 77 Ill. App. 3d 287 (disparity justified where defendant was the planner of the crime and the most active participant); *People v. Johnson* (1978), 59 Ill. App. 3d 640 (disparity in armed-robbery sentences upheld where defendant had

entered the gasoline station with a weapon and had taken the money, and his unarmed accomplice drove the getaway car).

Here, it was the defendant and Trevino who stole the car used in the armed robbery. Trevino's statement which was a part of the presentence reports for both the defendant and Michael showed that the defendant entered the food store first, commanded the victims, and emptied the cash registers with Trevino. Michael was the lookout. It is true Michael had a gun during the robbery, according to the testimony of codefendants, but, of course, the defendant also was armed; he carried a knife.

In addition, the defendant, Trevino said, drove the stolen getaway car and threatened Officer Cullen with injury or death when it threw him aside. Considering the information before the court on the issue of the sentence, the court properly could have concluded that the defendant was a more serious offender than his brother. We consider the sentence imposed by the trial judge should not be disturbed.

The defendant, in oral argument contended that Trevino's statement to the police should have been entirely disregarded, though section 5—3—2(a)(6) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—2(a)(6)) does provide that a presentence report may contain any matter deemed relevant by the investigating officer.

We do not consider this contention because it has not been preserved for review. Trevino's statement was set out in the third and fourth pages of the defendant's presentence report. At the sentencing hearing, the defendant acknowledged that he had received the report. He did not object to the inclusion of Trevino's statement within the report, although he did object to different material in the report. After the court struck the material in response to the defendant's objection, the defendant said he had no

further objections to the report. Any question regarding the inclusion of the statement was waived. See *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77 (failure to object in the trial court waives errors the court could have corrected by sustaining the objection); *People v. Fowler* (1979), 72 Ill. App. 3d 491, 500 (failure to object at the sentencing hearing to the form or depth of the presentence report waived consideration of that issue on review); *People v. Burdine* (1978), 57 Ill. App. 3d 677, 688 (inaccuracies in the presentence report and the prosecutor's argument concerning defendant's prior offenses were waived by defendant's failure to object or to point out error at the hearing on aggravation and mitigation); *People v. Handley* (1977), 51 Ill. App. 3d 68 (alleged error that the court improperly considered arrests without convictions in sentencing the defendant was waived because defendant did not object at the time of sentencing to the inclusion of the arrests in the presentence report).

Moreover, the defendant did not make this contention in the brief he filed in this court. Our rules expressly provide that a party waives points he has not argued in his brief. 73 Ill. 2d Rules 341(e)(7), (f).

For the reasons given, the judgment of the appellate court reducing the defendant's sentence is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, specially concurring:

I concur in the judgment, but in doing so I feel the need to emphasize, as the court's opinion fails to do, the relevance of the fact that defendant was convicted of both aggravated kidnaping (not for ransom), a Class 1 felony, and armed robbery, a Class X crime, while in contrast his older brother was not convicted of participating in the kidnaping. The defendant's involvement in the kidnaping indi-

cates that he was the primary actor in the armed robbery, for without the car taken from the kidnap victim, the robbery would have been impossible. More importantly, just as a trial judge may take a defendant's previous crimes into account when sentencing, despite the fact that the defendant has already been punished for those crimes, he is also entitled to take into consideration concurrent criminal convictions. The fact that Ricardo Godinez committed two felonies in one day, in the course of which he abducted and terrorized an innocent woman (who later identified him) by driving her around, part of the time while she was blindfolded, after he seized her, binding her hands and feet and holding her captive for several hours in an apartment, indicates that his offenses were more serious than his brother's and that he is a greater danger to society and less likely to change his ways than is his brother. Thus even though the trial judge imposed concurrent sentences on the defendant, perhaps because he believed this to be required under section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4), the judge did not abuse his discretion in imposing longer sentences for either or both convictions than would have been imposed in the absence of the other conviction.