The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Joseph L. PEREZ, Defendant-Appellant.

No. 82CA1160.

Colorado Court of Appeals, Div. III.

Jan. 3, 1985.

Rehearing Denied Jan. 24, 1985.

Certiorari Granted May 6, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Virginia Byrnes Horton, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State

Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Joseph L. Perez, appeals his conviction after a jury trial of theft and second degree forgery. We affirm.

Defendant contends that the trial court violated his attorney-client privilege and interfered with his right to effective assistance of counsel by allowing the prosecution, in its case-in-chief, to call Andrew J. Bradley, a document examiner, since Bradley had been originally retained as an expert witness by the defense. We disagree.

On December 29, 1980, defendant was charged with one count of theft and one count of forgery in connection with fraudulent checking transactions totalling $12,100 at Park National Bank in Pueblo, Colorado. The transactions occurred between October 24 and 27, 1980. In January 1982, while preparing for trial, defendant's first attorney hired Bradley as an expert handwriting analyst to evaluate and compare defendant's handwriting with that on several forged checks. Prior to this date, however, defendant had voluntarily disclosed his handwriting style to the police department and the district attorney.

Bradley initially examined copies of the checks in question along with copies of writing exemplars made by the defendant. Although he stated he could not positively determine whether the checks were written by defendant without examining the original checks, Bradley concluded that defendant's style of writing was different from that on the copies of the checks. He left a message to that effect with the secretary to defendant's first attorney, and requested that the attorney provide him with the original documents. Defendant's first attorney did not respond, and there was no further contact between them.

On February 2, 1982, as a result of a plea agreement, defendant entered a guilty plea to the theft charge and the forgery charge was dismissed. On March 23, 1982, defendant's first attorney was allowed to withdraw, and defendant's new attorney moved to withdraw defendant's guilty plea. At the Crim.P. 32(d) hearing on defendant's motion, Bradley testified as a witness for defendant concerning his conclusions that defendant probably did not execute the forged checks. The court found that defendant's guilty plea was not voluntary and granted his motion to withdraw the plea. Both charges were reinstated and a jury trial was set.

On April 20, 1982, after examining the original checks which defendant's second attorney had obtained from the Colorado Bureau of Investigation (CBI), Bradley again concluded that the handwriting on the checks was inconsistent with the handwriting provided in the exemplars from the defendant. Later however, in May 1982, after comparing some of defendant's cancelled checks with the original forged checks, Bradley concluded that both were written by the defendant.

The prosecution endorsed Bradley as its witness after the defense decided not to call him at trial. After an *in camera* hearing, and over defendant's objection, the court allowed Bradley to testify during the prosecution's case-in-chief. The jury returned guilty verdicts to both charges. Defendant's motion for a new trial was denied, and he was sentenced to imprisonment.

■ The attorney-client privilege exists for the benefit and protection of the client and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations. *Law Offices of Bernard D. Morley, P.C. v. MacFarlane*, 647 P.2d 1215 (Colo.1982). It does not immunize the knowledge of the client or the knowledge of the attorney which is obtained from sources other than confidential communications by his client.

"Applied to the expert situation, this means that the expert's observations, conclusions and information derived from sources other than the client's communication constitute the expert's knowledge,

which, like the client's knowledge and the attorney's knowledge, is not privileged." 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 503(a)(3)[01] (1982).

Here, the handwriting expert based his opinion on handwriting exemplars which are deemed to be non-communicative or non-testimonial in nature. *See Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Moreover, defendant, by previously voluntarily disclosing his handwriting style to both the district attorney and a detective at the police station, stripped his subsequent handwriting samples of any possible confidentiality within the meaning of the attorney-client privilege. *United States v. Pipkins*, 528 F.2d 559 (5th Cir.1976), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976).

In *Pipkins*, the defendant voluntarily gave his handwriting sample to a postal inspector assigned to investigate the theft and forgery of a government check. Subsequently, defense counsel hired an expert who examined the forged check and defendant's handwriting samples. The expert's report was unfavorable, and accordingly, he was not called as a witness for the defense. The expert was allowed, however, to testify for the prosecution.

In affirming the judgment of the trial court, the Court of Appeals determined that the defendant had failed to establish that his handwriting samples were confidential communications within the meaning of the attorney-client privilege, held that handwriting is not intrinsically confidential, and concluded that any hope of confidentiality was lost by the prior disclosure to the government of the defendant's handwriting style. Likewise, the defendant here cannot, after giving exemplars to the police and the district attorney, successfully argue that his handwriting was a confidential communication. Thus, the expert's opinion, which was based on his observations derived from sources other than the client's confidential communications, was correctly permitted by the trial court. *United States v. Pipkins, supra.*

"A witness is not the property of either party to a suit and simply because one party may have conferred with a witness and even paid him for his expert advice does not render him incompetent to testify for the other party." *People v. Fowler*, 72 Ill.App.3d 491, 28 Ill.Dec. 787, 390 N.E.2d 1377 (1979). Attorneys should not be able to thwart the factfinding process and take unfavorable experts off the market simply by placing them on their payroll and claiming the attorney-client privilege. *Cf. United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961); *see* Saltzburg, *Communications Falling Within the Attorney-Client Privilege*, 66 Iowa L.Rev. 811 (1981); Friedenthal, *Discovery and Use of an Adverse Party's Expert Information*, 14 Stan.L. Rev. 455 (1962).

Other jurisdictions have considered and rejected the expansion of the attorney-client privilege to preclude the adverse testimony of experts originally retained by the other party, favoring the social policy of bringing to light relevant facts. *Noggle v. Marshall*, 706 F.2d 1408 (6th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 530, 78 L.Ed.2d 712 (1983); *United States v. Pipkins, supra; Levitsky v. Prince George's County*, 50 Md.App. 484, 439 A.2d 600 (1982) (permitting real estate appraiser to testify, concluding that his opinion was obtained by viewing the property and applying his expertise and did not violate the attorney-client privilege); *People v. Speck*, 41 Ill.2d 177, 242 N.E.2d 208 (1968), *rev'd in part on other grounds*, 403 U.S. 946, 91 S.Ct. 2279, 29 L.Ed.2d 855 (1971) (no violation of attorney-client privilege for fingerprint expert privately retained by defendant to testify for prosecution); *State v. Steinkraus*, 76 N.M. 617, 417 P.2d 431 (1966) (allowing appraiser retained by one party to testify on behalf of the other, concluding that attorney-client privilege should be applied only to protect communications, not facts); *State v. Craney*, 347 N.W.2d 668 (Iowa 1984), *cert. denied*, — U.S. —, 105 S.Ct. 255, 83 L.Ed.2d 192 (1984) (rejecting constitutionalized attor-

ney-client privilege for defendant's communications to psychiatric expert).

We are in accord with this line of reasoning and agree that the attorney-client privilege was not established nor designed as a strategic tool to allow one party to gain an advantage by keeping unfavorable evidence to itself rather than sharing it with others. *See* Saltzburg, *supra.* We affirm the ruling of the trial court that the attorney-client privilege did not encompass the expert's testimony and hold that the admission of the expert's testimony did not constitute a denial of the effective assistance of counsel.

Defendant's other contention that the trial court erred by excluding similar transaction evidence is without merit. *People in Interest of R.L.,* 660 P.2d 26 (Colo.App. 1983); *People v. Bueno,* 626 P.2d 1167 (Colo.App.1981).

Judgment affirmed.

BABCOCK and METZGER, JJ., concur.