THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEROME SOSKINS, Defendant-Appellant.

Second District   No. 2—84—0040

Opinion filed November 1, 1984.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Fred Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Jerome Soskins, was found guilty by a jury of theft in excess of $300 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)), and was subsequently sentenced to a 30-month term of probation, which included a six-month period of imprisonment in the Lake County jail.

On appeal defendant raises three issues for our review: (1) whether the State failed to prove that he obtained unauthorized control of the subject automobile in Lake County; (2) whether the State failed to prove beyond a reasonable doubt the requisite intent to permanently deprive; and (3) whether the State was improperly allowed to impeach two of its own witnesses through the use of their prior felony convictions.

The count of the information on which the State proceeded to trial alleged that on August 2, 1983, in Lake County, defendant committed the offense of theft in violation of section 16—1(a) in that he "knowingly obtained unauthorized control" over an automobile having a value in excess of $300 of the estate of Elizabeth Strawn, intending to deprive it permanently of the benefit of said property. The testimony adduced at the jury trial established the following relevant evidence.

On July 20, 1983, the body of Elizabeth Strawn was found in her apartment in Chicago. She had died of natural causes. Defendant, a Chicago police officer, was one of several police officers who came to the apartment, and he and his partner removed her body. The deceased's daughter, Billie Cowell, who was living in Maryland, was immediately informed by telephone of her mother's death. She telephoned her mother's apartment and talked briefly with the defendant about the funeral home to which the body would be taken and her intention to come to Chicago the next day. On July 22, Billie Cowell went to the apartment. She was aware that her mother owned a 1981 Ford Escort. She was not able to find the title or locate the automobile itself. On July 23 she reported the vehicle as stolen.

Chicago police officer Henry Dombrowski was one of two officers receiving the stolen vehicle report from Cowell. While looking for the vehicle in the area of the apartment on July 23, the officer saw the

police vehicle defendant was assigned to, and stopped to inquire whether defendant had any knowledge of the missing vehicle. At first defendant said he did not, but then he recalled that at the time defendant was removing the body from the apartment, a black male had inquired about how he could be paid for repairs to the vehicle. Defendant said he had seen the man before and he thought he worked in a body shop. Defendant said he would look for the car.

Defendant called Billie Cowell later in the day on July 23. Cowell testified defendant said that he thought he knew where the automobile was, that a black man had done repairs to it and had the vehicle in a shop, and that he was owed money for it. Defendant said he would try to locate the car. On July 24, defendant called again and said the man who had the automobile was named Williams, and her mother apparently had a prior accident, but had not filed an accident report. Defendant said Williams was owed money. He said Williams and her mother knew each other from "A.A." Defendant said he had not yet talked to Williams, but heard this information on the street. Cowell told him that any questions of money owed for the repairs would be handled by her lawyer, Henry Golden, but she was not convinced an accident occurred.

Attorney Henry Golden received a telephone call from defendant on July 26. Defendant said he was investigating the missing car. Defendant again repeated the story about the repairman and also stated a boyfriend of the deceased may have taken the vehicle. Golden was contacted again by defendant on July 28. Defendant told Golden that he thought a repairman named Williams had done the repair work, that Williams didn't have a shop but had done it on the side for $1,100 and had been paid $500 and was looking to receive another $600, and that he would try to locate Williams and get the car. Golden told defendant that the individual should file a claim with the estate. Golden told him that Mr. Strawn, the deceased's former husband, was authorized to pick up the automobile if it was found. Defendant telephoned later the same day and said he located the vehicle, that Williams had it, that Williams had the title, too, but wouldn't turn over the car unless he got $600. Defendant suggested he might be able to find a buyer for the car, and pay off the $600 and remit the balance to Billie Cowell. Golden told him that was not the way to proceed but would consult Cowell. On July 29, defendant called Golden again and was told that Cowell was angry, that she wanted the car back, and that defendant should forget about acting as an intermediary. Golden said Cowell would sign a complaint against Williams if necessary. Defendant said he would still try to find Williams. In a fi-

nal telephone conversation with defendant on July 30, Golden told him Cowell had complained to defendant's commanding officer, and it was important to get the car back now. Defendant said he would try, but he was going out of town.

William Strawn talked by telephone with defendant on July 28. Defendant said he had found the car in a repair garage and $600 was still owing. Strawn said he had no authorization to pay $600, but just was to pick up the car. Defendant said he was going on vacation and the whole matter would be in abeyance for that period of time.

Police officer Theodore Raab of the internal affairs division of the Chicago police department was assigned to investigate defendant. On August 1, he went to Great Lakes Auto Sales in North Chicago in an undercover capacity. Pretending to be a customer, he met a salesman, Ben Hopkins. After that, Raab and his partner covered other used car lots in the area and eventually located Elizabeth Strawn's automobile at Bill Archer Motors, a used car lot in Waukegan. The office was closed at the time, and a surveillance of the lot was established. The next morning, Raab and another female officer posing as his wife went to Great Lakes Auto Sales and spoke with Hopkins again. After a conversation with Hopkins and Allen Krause, Hopkins was given a set of keys by Krause, and Hopkins, Raab and the other officer left to go to the Archer Motors' lot. Upon arriving there, Hopkins gave Raab the set of keys which unlocked the door to Elizabeth Strawn's vehicle. Raab and the other officer took it for a test drive and found Elizabeth Strawn's owner's registration card inside the glove compartment. Upon returning to the Archer Motors' lot, Raab saw defendant in the office after Hopkins handed defendant the keys. Raab told defendant he would pay $3,500 for the vehicle. Defendant said he already had a $50 deposit on the car and wouldn't know until Friday whether it would go through because of the other person's credit. At that point other officers of the internal affairs division arrived. Officers of this division testified that when they arrived defendant told them the car was in probate and all he was trying to do was make a couple of bucks off the car.

Elizabeth Strawn's automobile was later inspected for body and fender damage. There was no indication of damage.

Allen Krause, owner of Great Lakes Auto Sales along with Michael Golden, defendant's brother-in-law, testified that defendant brought the vehicle in question to his lot in late July. Defendant asked him to appraise it and said the car might become available for sale. Defendant took the vehicle to the Archer Motors' lot and left it there. At that time, Krause and defendant were considering going into busi-

ness together to rent the Archer Motors' lot. Krause told Ben Hopkins, a salesman of his at Great Lakes, that the automobile could become available for sale. While Raab was present on August 2, Krause called defendant, who said the car was not available at the time, but Krause sent Raab over to Archer Motors with Hopkins and the keys.

Ben Hopkins also testified to certain events already discussed above.

William Archer testified that defendant was present on the Archer Motors' lot on August 2 to discuss purchase of the lot. He heard defendant tell Raab that he could not sell the car at that time. Defendant also told Archer the car was going through probate and he would know in several days if it could be sold. Defendant along with Al Krause had originally left the car on his lot and defendant said then it was going through probate.

No witnesses testified for the defense.

■ Defendant's first contention on appeal is that he was charged and convicted of "obtaining" unauthorized control over the automobile in question in Lake County as opposed to an allegation that he "exerted" unauthorized control over the vehicle in Lake County. He argues that the proofs do not show he "obtained" unauthorized control of the automobile in Lake County, even assuming *arguendo* that they show he "exerted" unauthorized control in Lake County, but instead the evidence suggests that the initial taking of the vehicle occurred in Cook County. Defendant maintains that the Illinois theft statute proscribing the criminal offense of theft uses the disjunctive "or" in describing the offense. He argues that "obtains or exerts" unauthorized control over property describes different theories of prosecution, *i.e.*, the term "obtains" referring to theft by the initial taking of the property, and the term "exerts" not necessarily limited to the initial taking. Defendant posits that as the proof of venue depends upon which form of theft is charged, the charge here alleging he "obtained unauthorized control" in Lake County was not proved and his conviction should be reversed.

The State essentially contends that the terms "obtains" and "exerts" as used in section 16—1(a) of the theft statute are interchangeable, and our recent decision in *People v. Poliak* (1984), 124 Ill. App. 3d 550, 464 N.E.2d 304, so held and is controlling in this case.

The offense of theft as defined in section 16—1 of the Criminal Code of 1961 applicable at the time of this offense is, in pertinent part, as follows:

"A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over property of the owner; or

(b) Obtains by deception control over property of the owner; or

(c) Obtains by threat control over property of the owner; or

(d) Obtains control over stolen property knowing the property to have been stolen by another or under such circumstances as would reasonably induce him to believe that the property was stolen, and

(1) Intends to deprive the owner permanently of the use or benefit of the property; or

(2) Knowingly uses, conceals or abandons the property in such manner as to deprive the owner permanently of such use or benefit; or

(3) Uses, conceals, or abandons the property knowing such use, concealment or abandonment probably will deprive the owner permanently of such use or benefit." Ill. Rev. Stat. 1983, ch. 38, par. 16—1.

Defendant was charged specifically with violating subsection (a) of section 16—1 in that he "knowingly obtained unauthorized control" over the automobile intending to deprive the owner permanently of the property.

While we agree with the defendant that the proofs appear to be that unauthorized control over the automobile was initially obtained in Cook County and that the evidence does not establish that defendant initially obtained his unauthorized control in Lake County, we do not find these conclusions dispositive of the issue presented.

In *People v. Poliak* (1984), 124 Ill. App. 3d 550, 556-57, 464 N.E.2d 304, the court rejected the contention (paradoxically made therein by the State) that the phrase "obtains or exerts" unauthorized control over property of another, as set forth in section 16—1(a), denotes different theories of prosecution. We held that the gravamen of the offense of theft described in section 16(a) is the unauthorized control of the property of another and that the statutory terms "obtains" and "exerts" describe the same offense and are indistinguishable means of accomplishing the proscribed conduct of unauthorized control. *People v. Poliak* (1984), 124 Ill. App. 3d 550, 556-57, 464 N.E.2d 304; see also *People v. Dziak* (1975), 30 Ill. App. 3d 859, 333 N.E.2d 582 (abstract).

In the definitional article of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 15—1 *et seq.*), the phrase "obtains or exerts control" over property, as used in the theft statute, is defined as in-

cluding, but not limited to, "the taking, carrying away, *** or possession of property." (Ill. Rev. Stat. 1983, ch. 38, par. 15—8.) From this definition, it is also apparent that the wording of section 16—1(a), "obtains or exerts control," is descriptive of the same offense, and the individual terms "obtains" and "exerts" are indistinguishable means of accomplishing the proscribed conduct of unauthorized control. The legislature clearly intended to create one substantive offense of unauthorized control by either means. On the other hand, where the statute specifically proscribes the conduct which is the basis of the particular type of theft offense using solely the term "obtains" (see, e.g., Ill. Rev. Stat. 1983, ch. 38, pars. 16—1(b), (c)), rather than "obtains or exerts," a separate definition is provided which defines "obtains," in this context, as meaning "to bring about a transfer of interest or possession." (Ill. Rev. Stat. 1983, ch. 38, par. 15—7(a).) As the defendant was charged and convicted here under section 16—1(a), which provides the means of accomplishing the proscribed conduct in terms of "obtains or exerts," the use of either word is descriptive of the same conduct.

■ The information charging the defendant specified Lake County as the locus of the crime and specified the date of the offense as August 2, 1983, which is the date defendant was arrested at the lot in Lake County where the automobile in question was then located. It is clear the State's theory of prosecution was directed toward proof of unauthorized control of the automobile in Lake County on August 2, 1983, and not the date of its initial taking in Cook County, apparently on July 20, 1983. Defendant does not maintain his defense at trial was dependent upon the wording of the information in terms of "obtains" only, or that it induced him to withhold any evidence. We find no defect regarding proof of venue in this case. (See People v. Alexander (1982), 93 Ill. 2d 73, 78-81, 442 N.E.2d 887.) Our reference in People v. Poliak, that the terms " 'exert' and 'obtain' are relevant in determining the locus of the proscribed conduct" (People v. Poliak (1984), 124 Ill. App. 3d 550, 558, 464 N.E.2d 304), was not intended to make venue dependent upon which of those terms was used, but instead indicated that venue for theft under 16—1(a) could in some cases lie in more than one county and the locus of the particular crime is determined by the offense as alleged in the charging instrument and by the proofs at trial.

■ Defendant's next contention is that the State failed to prove that he had the requisite intent to permanently deprive. More specifically, defendant maintains that the evidence of his statements that the car was not yet available for sale, his reluctance to sell the vehicle to

Raab, and his conversations with the Strawn family, all indicate a lack of intent to permanently deprive the owner of the benefit of the vehicle. He argues that it is much more reasonable to assume defendant would have ultimately turned over the car to Cowell if she would not authorize its sale. Additionally, defendant contends that, if anything, he was only guilty of attempted theft by deception of $600 concerning the story about Williams, but that charge was not filed against him.

An essential element of the offense of theft is that the accused possessed an intent to deprive the owner permanently of the use or benefit of the property. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(a)(1); *People v. Gordon* (1976), 64 Ill. 2d 166, 170, 355 N.E.2d 3.) Generally, the intent to permanently deprive the owner of the use or benefit of the property is proved by circumstantial evidence. *People v. Smith* (1984), 124 Ill. App. 3d 914, 922, 464 N.E.2d 1206.

In the instant case, the evidence established that defendant possessed the automobile on August 2, 1983, and deprived the estate of Elizabeth Strawn permanently of the use or benefit of it when he retained possession of the vehicle, knowing it belonged to the estate and that Billie Cowell refused to pay for any alleged repair to it. His story, recited to Billie Cowell and Attorney Golden, that a black man named Williams had the vehicle and was keeping it until a repair bill balance was paid, was never supported by any evidence at trial. It was shown that he possessed the automobile at a used car lot, allowed it to be shown to a potential buyer, and revealed it could be sold if another prospective purchaser's credit was not approved. When confronted by investigating officers, he made the statement that all he was trying to do was make a couple of bucks off the car.

■ Under all these circumstances and the entire evidence in this record, it has been proved that defendant's intent was to deprive the owner permanently of the use or benefit of the automobile. Even though defendant made some statements to others that the vehicle could not be sold because it was in probate, it is clear that defendant had no authority from Attorney Golden or Billie Cowell to possess the vehicle himself for any reason, other than to return it, while the deceased's legal affairs were being administered. We find no reasonable doubt of the defendant's intent to deprive the owner permanently of the automobile has been shown.

■■ Defendant's final contention is that he is entitled to a new trial because the trial court allowed the State to impeach two of its own witnesses, Allen Krause and Benjamin Hopkins, by admitting evidence of their prior felony convictions. He argues on appeal that this was not "an appropriate case for such impeachment since neither

Krause nor Hopkins were hostile witnesses and since neither side asserted that any portion of their testimony was untruthful." Defendant further argues the evidence of their prior convictions was, therefore, not relevant to any valid issue before the jury, and even relevant evidence should be excluded if its probative value is outweighed by its prejudicial effect upon the defendant. As both these witnesses were used car salesmen at a used car lot where defendant had originally taken the automobile, and as Krause was shown to have known defendant for a long period of time and was planning to be a partner with defendant in the used car lot where the automobile in question was located, defendant maintains the State was "trying to tar the defendant with the records of his associates."

At trial, defendant's repeated, specific objections to the State's proposed evidence of these witnesses' prior felony convictions were that as defendant did not intend to impeach the State's witnesses with their prior felony convictions, the State could not impeach its own witnesses. However, the State may prove up the prior criminal record of its own witness on direct examination as an anticipatory disclosure designed to reduce the prejudicial effect of such evidence on the witness' credibility (*People v. DeHoyos* (1976), 64 Ill. 2d 128, 131-32, 355 N.E.2d 19; *People v. Peebles* (1983), 114 Ill. App. 3d 684, 694, 449 N.E.2d 230), and Supreme Court Rule 238(a) (87 Ill. 2d R. 238(a)) also provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." (See *People v. Garcia* (1983), 97 Ill. 2d 58, 79, 454 N.E.2d 274; *People v. Gonzalez* (1983), 120 Ill. App. 3d 1029, 1039, 458 N.E.2d 1047.) Thus, the specific objection which the defendant relied upon at trial was properly denied by the trial court. Although the defendant on appeal argues that the evidence of the prior criminal convictions was not relevant because he was not going to introduce that evidence to challenge the credibility of those witnesses and that relevant evidence still can be excluded if its prejudicial effect to defendant outweighs its probative value, these contentions did not form the basis of the objection to this evidence in the court below. It is axiomatic that a specific objection to evidence operates as a waiver of all grounds not specified in the objection. *People v. Rink* (1983), 97 Ill. 2d 533, 543, 455 N.E.2d 64; *People v. Baker* (1983), 114 Ill. App. 3d 803, 807, 448 N.E.2d 631.

■ Even were we to assume that defense counsel's comment made during argument on his specific objection that the State was only trying to tar defendant with the record of someone else could be construed as a relevancy objection or an objection going to the prejudicial effect of otherwise relevant evidence, we would not find defend-

ant suffered any prejudice. The State did not comment in final argument on the prior convictions of these witnesses or attempt to infer guilt by defendant's association with these witnesses.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SCHNAKE and LINDBERG, JJ., concur.