(257 P.3d 839)
No. 103,124

STATE OF KANSAS, *Appellee*, v. SHANNON J. ROLLINS, *Appellant*.

Opinion filed July 1, 2011.

Randall L. Hodgkinson, of Kansas Appellate Defender Office, for appellant.

Steven J. Obermeier, assistant district attorney, Stephen M. Howe, district attorney, and Steve Six, attorney general, for appellee.

Before LEBEN, P.J., GREEN and MARQUARDT, JJ.

MARQUARDT, J.: Shannon Rollins appeals his jury conviction of theft, a severity level 9 nonperson felony. The district court sentenced Rollins to 11 months' imprisonment with no postrelease supervision. We affirm.

On August 4, 2008, Richard Orrison, Vice President of Wall Ties and Forms (Wall Ties), a manufacturer of aluminum forming systems that are used in the concrete industry, notified the police that two pallets or "skids" of aluminum forms had been stolen from Wall Ties.

During his internal investigation, Orrison watched one daytime and two nighttime surveillance videos that showed Rollins, a Wall

Ties employee, using two forklifts to load the missing skids into a van the evening of July 31, 2008. The nighttime videos, along with eyewitness testimony, evidenced Rollins leaving the loading dock about 8:29 p.m. with the loaded van. He returned at 9:35 p.m. The missing skids were never located. Rollins was charged with theft under K.S.A. 21-3701(a)(1) and (b)(3).

During Rollins' trial, the district court overruled his contemporaneous and continuing objection to the State's attempt to introduce testimony concerning the daytime surveillance video. Orrison testified about what he saw on the daytime surveillance video. Tom Sharkey, the quality control grounds supervisor at Wall Ties, also testified that he viewed the daytime surveillance video. Sharkey testified that the daytime video showed Rollins moving the missing skids to a section of the loading dock reserved for square tubing and inactive orders. Sharkey noted this was odd because aluminum forms do not belong in that section of the loading dock.

The State introduced Rollins' timesheet over his objection claiming that the State failed to produce it during discovery. The district court overruled Rollins' objection. The timesheet showed that Rollins arrived at work on July 31, 2008, at 4:20 p.m. and left work at 10:47 p.m. Although Rollins was scheduled to work the next day, Friday, August 1, 2008, the timesheet indicated he was absent that day and also on August 5 and 6.

Rollins testified that when he arrived for work on July 31, 2008, he was informed that the "first shift" failed to make a delivery. Rollins made the delivery of 16 7-foot square tubing units to BRB Contractors' construction site at 1701 Baltimore, Kansas City, Missouri. Rollins stated that "Mike" signed for the delivery, and Rollins filed the paperwork when he returned to Wall Ties. Rollins testified that after making this delivery he took an extended vacation due to his mother's recent death and his father's health issues.

In rebuttal, Carl Englican, vice president and partner of Wall Ties, testified: (1) Wall Ties only sells the 7-foot square tubing units internationally, not domestically; (2) there was no construction site at 1701 Baltimore in Kansas City, Missouri, on that date; and (3) Wall Ties had no client named BRB Contractors. Additionally, Wall Ties' human resources employee Melissa Martin testified that Roll-

ins did not file a formal request for an extended vacation and could not take the time because he had only 1 vacation day available.

The jury convicted Rollins of theft, and he was sentenced to 11 months' imprisonment with no postrelease supervision. Rollins timely appeals claiming substantial competent evidence does not support the alternative means of "obtaining" and "exerting" the unauthorized control required for a theft conviction. Additionally, he claims the district court: (1) violated his constitutional rights when it dismissed the jury for the evening outside of his presence; (2) abused its discretion in admitting the timesheet in violation of K.S.A. 22-3212; and (3) erred in admitting testimony concerning the daytime surveillance video without a proper foundation. Finally, Rollins argues cumulative errors deprived him of a fair trial.

SUBSTANTIAL COMPETENT EVIDENCE FOR THE THEFT CHARGE

Rollins claims the State charged him with committing theft by alternative means but failed to prove both means. Therefore, his conviction for theft must be reversed because the jury verdict was not unanimous. The State argues that this is not an alternative means case because the terms "obtaining" and "exerting" are indistinguishable in proving unauthorized control. The issue of jury unanimity is a question of law over which an appellate court has unlimited review. *State v. Kesselring*, 279 Kan. 671, 678, 112 P.3d 175 (2005).

In an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. *State v. Wright*, 290 Kan. 194, 202, 224 P.3d 1159 (2010). "In an alternative means case the jury must be unanimous as to guilt for the single crime charged, but need not be unanimous as to the particular means by which the crime was committed, so long as substantial evidence supports each alternative means." *State v. Becker*, 290 Kan. 842, 855, 235 P.3d 424 (2010).

"When the sufficiency of the evidence is challenged in a criminal case, this court reviews all the evidence, viewed in the light most favorable to the prosecution to determine whether the court is convinced that a rational factfinder could have found the defendant

guilty beyond a reasonable doubt." *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

To support his argument, Rollins claims K.S.A. 21-3701(a)(1) provides two possible means by which the crime of theft could occur. K.S.A. 21-3701(a) states: "Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property . . . (1) *Obtaining or exerting* unauthorized control over property . . . ." (Emphasis added.)

Rollins claims that Kansas treated the terms obtaining or exerting differently in *State v. Kunellis*, 276 Kan. 461, 78 P.3d 776 (2003). In *Kunellis*, 15-year-old Kenneth Kunellis and several others stole motorcycles from an Olathe Suzuki dealership, drove against traffic on a multilane highway while being pursued by police, and killed two people in a collision. After a 4-day trial, the jury found Kunellis guilty of burglary, theft, and two counts of felony murder.

On direct appeal, Kunellis argued, *inter alia*, that the jury instructions and verdict forms for felony murder and theft provided the jury with an inaccurate statement of the law. Kunellis claimed that the theft was not a continuing offense and that "a conviction for felony murder based upon a death occurring after the 'commission' of the theft, without more, cannot stand." 276 Kan. at 468.

The *Kunellis* court, after examining *State v. Gainer*, 227 Kan. 670, 672-74, 608 P.2d 968 (1980), and reviewing our criminal code's predecessor, the Illinois Criminal Code, determined that the theft was complete when Kunellis "obtained" control over the motorcycles. Therefore, there was no continuing theft that would support the felony-murder charges based on "Kunellis' unbroken 'exertion of control' over the motorcycles from the time of theft until the time of the accident." 276 Kan. at 471. Kunellis' convictions were reversed, and the case was remanded for a new trial. 276 Kan. at 473. Rollins' case does not involve a felony-murder charge; therefore, the *Kunellis* case is not applicable here.

The State claims this is not an alternative means case because K.S.A. 2010 Supp. 21-3110(13) treats "[o]btains or exerts control" as one singular term and is defined to "include[] but is not limited

to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property."

Neither party cites any Kansas authority that is directly on point, but the State points to several Illinois cases that suggest "obtains" and "exerts" are two indistinguishable means of describing the same conduct, *i.e.*, either term describes the same conduct and does not provide two alternative means of committing theft. See *People v. Soskins*, 128 Ill. App. 3d 564, 570, 470 N.E.2d 643 (1984) ("We held that the gravamen of the offense of theft described in section 16-1[a] is the unauthorized control of the property of another and that the statutory terms 'obtains' and 'exerts' describe *the same offense and are indistinguishable means* of accomplishing the proscribed conduct of unauthorized control."); *People v. Poliak*, 124 Ill. App. 3d 550, 556-57, 464 N.E.2d 304 (1984) ("The terms 'obtain' and 'exert' are indistinguishable means of accomplishing the proscribed conduct of unauthorized control. Therefore, the terms are not different as they relate to the substantive elements of the offense of theft."); *People v. Muskgrave*, 60 Ill. App. 3d 742, 744, 377 N.E.2d 595 (1978) ("[T]he supreme court ruled that section 16-1[d] conduct [obtaining control over property known to be stolen] is included in section 16-1[a] conduct because it is exerting unauthorized control over property.").

Ultimately, resolution of this issue depends on the plain language of the statute. Under K.S.A. 2010 Supp. 21-3110(13), the phrase "obtains or exerts control over property" includes but is not limited to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property. There is no quantifiable difference between the actions that constitute obtaining or exerting; these words create a distinction without a difference. One must necessarily obtain property one has exerted control over, and one must necessarily exert control over property one has obtained.

Therefore, although stated in the disjunctive in K.S.A. 21-3701(a)(1), the terms are not different as they relate to the substantive elements of theft; they merely describe the same conduct. Consequently, this is not an alternative means case. The district court did not err in instructing the jury on the elements of theft.

## CONSTITUTIONAL RIGHTS

Rollins next claims, for the first time on appeal, that the district court violated his constitutional right to be present at all critical stages of his trial when it dismissed the jury for the evening during deliberations. The State, however, contends that Rollins failed to preserve this issue for appeal because a deliberating jury's evening adjournment is not a critical stage in a trial and does not implicate fundamental rights.

A claim that a defendant was deprived of his or her statutory and constitutional right to be present during a portion of the trial raises legal questions that are subject to unlimited review on appeal. *State v. Engelhardt*, 280 Kan. 113, 121, 119 P.3d 1148 (2005).

First, there is no indication in the record on appeal that Rollins was not present when the district court dismissed the jury for the evening. After closing arguments, the district court told the bailiff to accompany the jury to the jury room to begin deliberations. The transcript continues:

"THE COURT: You'll have all the exhibits with you, including the video. And if you need to watch it, we'll make arrangements for the laptop or something to go back there and you can watch it on that.

"(Whereupon the jury commences deliberations.)

"(Whereupon the jury recesses for the evening and resumes delibe[r]ations Tuesday, July 21, 2009.)"

The next day, after appearances and noting that Rollins was present in the courtroom, the district court made a note for the record:

"THE COURT: The record should reflect that *everybody is present that was here yesterday*. We're outside the presence of the jury. I just wanted to make a little brief record that the jury deliberated until about 5:25, decided to go home. I admonished them not to talk to each other or anyone else about the case; to come in here at 9:00 and begin their deliberations; they couldn't start their deliberations until everybody was here. And I don't know if they're all here yet or not, they're all en route. And I also told them not to do any independent investigation or any googling or anything like that, decide the case based on what they heard here." (Emphasis added.)

Based on the record on appeal, there is no indication Rollins was not present when the district court dismissed the jury for the evening. There is also no indication in the record on appeal that the

jury was brought back into the courtroom when it was dismissed for the evening. It is an appellant's duty to designate the record to demonstrate his or her claims of error. *State v. McMullen*, 290 Kan. 1, 5, 221 P.3d 92 (2009). Assertions made in an appellate brief are not sufficient to satisfy inadequacies in the record on appeal. *State v. Bloom*, 273 Kan. 291, 307, 44 P.3d 305 (2002). Thus, without an adequate record, the claim of error fails. *Ludlow v. State*, 37 Kan. App. 2d 676, 684, 157 P.3d 631 (2007).

K.S.A. 22-3405(1) provides in relevant part: "The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law." Our Supreme Court has interpreted K.S.A. 22-3405(1) to mean:

"[A] felony defendant must be present at any stage of the trial when the jury is in the courtroom or when the defendant's presence is *essential to a fair and just determination of a substantial issue*. The statutory command of K.S.A. 22-3405(1) is analytically and functionally identical to the requirements under the Confrontation Clause and the Due Process Clause of the federal Constitution that a criminal defendant be present at any critical stage of the proceedings against him or her." (Emphasis added.) *Engelhardt*, 280 Kan. 113, Syl. ¶ 2.

Rollins cites *State v. Coyote*, 268 Kan. 726, 1 P.3d 836 (2000), for the proposition that "[a]ny ex parte jury communication with the trial court violates a defendant's constitutional and statutory right to be present." However, in *Coyote*, the district court answered a jury question without (1) advising counsel, (2) providing the parties with the question, or (3) giving them an opportunity for input in the presence of the defendant. Here, the district court merely admonished the jury and sent them home for the evening.

Rollins cites no authority that indicates the defendant's presence is essential to a fair and just determination of a substantial issue when the district court dismisses the jury for the evening. Nevertheless, even if this court determined there was statutory or constitutional error, it was harmless. See *Chapman v. California*, 386 U.S. 18, 21-22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (if appellate court able to declare beyond a reasonable doubt error had little, if any, likelihood of having changed result of trial, error harmless);

*State v. Kendall*, 274 Kan. 1003, 1010, 58 P.3d 660 (2002) (errors not affirmatively causing prejudice to substantial rights of defendant, not preventing substantial justice deemed harmless).

Here, the strength of the prosecution's case was overwhelming, Rollins did not object when the jury began deliberating the next day, and the dismissal was an ex parte communication that did not concern any critical aspects of the trial. See *State v. McGinnes*, 266 Kan. 121, Syl. ¶ 4, 967 P.2d 763 (1998) (noting several significant factors in determining whether an ex parte communication between a judge and a juror may be declared harmless beyond a reasonable doubt). Thus, if the district court erred, it was harmless beyond a reasonable doubt.

## ADMITTING EVIDENCE NOT DISCLOSED DURING DISCOVERY

Next, Rollins claims the district court erred by admitting his timesheet into evidence after the State failed to produce it during discovery. Accordingly, the sole question is whether the district court should have excluded the timesheet as a sanction for a violation of the discovery order.

"K.S.A. 22-3212(g) authorizes a broad array of sanctions for violations of discovery orders in criminal cases, including permitting the discovery or inspection of materials not previously disclosed, granting a continuance, prohibiting the party from introducing into evidence the material not disclosed, or entering 'such other order as [the court] deems just under the circumstances.' By granting the option to impose sanctions the trial court deems 'just,' the provision grants discretion to determine the appropriate sanction. Consequently, a trial court's denial of a motion seeking to exclude the testimony of a witness who violated a discovery order in a criminal case is reviewed under an abuse of discretion standard if due process rights are not implicated by the violation." *State v. Johnson*, 286 Kan. 824, 832, 190 P.3d 207 (2008).

Rollins claims the State's failure to produce his timesheet during discovery prejudiced his due process rights and denied him a fair trial. Rollins fails to cite any authority or make any argument to support this issue. Further, Rollins fails to suggest the timesheet constituted exculpatory evidence and, consequently, abandons his argument that the district court violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). See *State v. Kelly*, 216 Kan. 31, 34, 531 P.2d 60 (1975)

(describing three scenarios in which the prosecution may not suppress, either in good or bad faith, evidence *favorable* to the defendant and material to guilt or punishment without violating the defendant's due process rights).

Because due process rights are not implicated, the district court has discretion whether to admit evidence not previously disclosed in discovery. *State Farm Fire & Cas. Co. v. Liggett*, 236 Kan. 120, 124, 689 P.2d 1187 (1984). Judicial discretion exercised within the appropriate legal parameters is protected if a reasonable person in the position of the district court could have made a similar decision. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

Rollins cites *State v. Campbell*, 217 Kan. 756, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975), to suggest he followed the proper procedure when he filed his motion to compel discovery contending (1) he made a timely request for the evidence he sought, (2) the State obviously had the timesheet in its possession because it admitted the timesheet at trial, and (3) the timesheet was relevant to prove he was absent from work on the days following the theft, which discredited his testimony concerning his extended vacation.

K.S.A. 22-3212 vests the district court with wide discretion in dealing with the failure of a party to comply with a discovery and inspection order. *State v. Jones*, 209 Kan. 526, 528, 498 P.2d 65 (1972). In *State v. Colbert*, 257 Kan. 896, 902, 896 P.2d 1089 (1995), our Supreme Court held that evidence not disclosed to the defendant before trial need not be suppressed or withheld from the jury if the facts become available to the defendant during trial and the defendant is not prejudiced in defending against them.

Rollins' only comment concerning prejudice is that "[h]ad the prosecution produced the timesheet to Mr. Rollins, he could have more thoroughly prepared to rebut a [S]tate's witness; Melissa Martin, the human resources employee testified that Mr. Rollins did not request vacation or clock out."

Importantly, Rollins did not request to view the timesheet, made no assertion of surprise from the contents of the timesheet, and did not ask for a continuance to examine the timesheet to "more thoroughly prepare[] to rebut" Martin's testimony. Additionally, on appeal, Rollins fails to explain how he could have rebutted the

timesheet if he had been given additional time during trial. The timesheet was merely cumulative to Martin's later testimony regarding Rollins' absence from work on the days following the theft.

Rollins has not shown the district court abused its discretion in admitting the timesheet at trial.

### ADMISSION OF TESTIMONY ABOUT A DESTROYED VIDEOTAPE

Next, Rollins contends the district court abused its discretion by admitting Orrison's and Sharkey's testimony concerning the contents of several surveillance videos based on a lack of foundation. Rollins points to two objections in the record stated below:

"Q. Okay. I want to go back to July 31st of 2008.
"Did it come to your attention that there were some shipments that—or that were missing?
"MS. EBMEIER: Okay. Judge, may I approach?
"THE COURT: Yes.
"(The following proceedings were had at the bench by court and counsel out of the hearing of the jury.)
"MS. EBMEIER: Judge, my objection would be to foundation, hearsay, and confrontation cross [sic]. It's become apparent that he's relying upon statements of Rick Backstrom, and Jamaal Wheat who are not present, as well as the videotape which has not been able to be reviewed by the defense. So I'm continuing my objection to his testimony.
"THE COURT: You may have that. Let me go ahead, and I'm going to go ahead and overrule that and permit you to do that. But obviously if these folks never are available, I'll strike the testimony.
"MS. SCHLIMMER: Right, and the case is going to be here what it's used for is what he's aware—he's going to testify to everything he personally did.
"THE COURT: Okay."

Rollins' defense counsel lodged the second objection immediately after the State called Sharkey to the witness stand and before Sharkey testified:

"MS. EBMEIER: Judge, the same objection I had as to Mr. Orrison.
"THE COURT: All right.
"MS. EBMEIER: I want to note that.
"THE COURT: All right."

" 'Whether an adequate evidentiary foundation was laid is a question of fact for the trial court and largely rests in its discretion. [Citation omitted.] So long as there is substantial competent evi-

dence to support the finding, it will not be disturbed on appeal.' [Citation omitted.]" *State v. Rohr*, 19 Kan. App. 2d 869, 870, 878 P.2d 221 (1994).

On appeal, Rollins cites no authority to support this position; instead, he attempts to distinguish these facts from those in *State v. Pham*, 281 Kan. 1227, 136 P.3d 919 (2006). In *Pham*, the State charged Ngan Pham with first-degree felony murder, aggravated kidnapping, five counts of kidnapping, six counts of aggravated robbery, aggravated burglary, conspiracy to commit kidnapping, and conspiracy to commit aggravated burglary in connection with a home invasion.

Acting on a tip, police obtained a surveillance video from a convenience store that showed Pham and his accomplices entering the convenience store just prior to the home invasion. The State admitted photographs taken from this surveillance video over Pham's objection contending the photographs lacked an adequate foundation because no person testified that the photographs accurately depicted what had occurred inside the store.

On appeal, our Supreme Court relied on *State v. Suing*, 210 Kan. 363, 502 P.2d 718 (1972), to conclude that witnesses had established an adequate foundation for the photographs. *Pham*, 281 Kan. at 1244-45. The assistant manager of the convenience store testified that the store had security cameras that recorded on a videotape and he gave that tape to the police. The police officer testified he watched portions of the surveillance videotape and took still photographs of what he saw on the tape. Although the "magic words" were lacking, the *Pham* court ruled that the witnesses laid a sufficient foundation for the admission of the photographs. 281 Kan. at 1245.

*Pham* is obviously distinguishable from the facts here. From the record on appeal, it appears that Rollins' objection only refers to the testimony concerning the contents of the surveillance videos, not to the actual admission of the surveillance videos. There is no need for Rollins to identify himself in the surveillance videos as he suggests in his appeal brief. Rollins confuses laying an adequate foundation for exhibits with laying an adequate foundation for a witness' testimony.

Orrison noted that he had worked at Wall Ties for 15 years, he knew the loading dock layout and shipping procedures, he personally knew Rollins, and had "[o]ff and on daily" contact with Rollins. Orrison also testified that he personally watched the surveillance videos.

Based on this testimony, Orrison perceived or observed the surveillance videos through his own senses and remembered or recalled the observation or perception. The State established Orrison's testimony was based on personal knowledge of the surveillance videos' contents and, consequently, a proper foundation was laid for Orrison's testimony about what he observed on the videos.

After a number of objections to Orrison's testimony, Rollins' objected to Sharkey's testimony saying, "Judge, the same objection I had as to Mr. Orrison." The objection was made before Sharkey began his testimony; it was not a contemporaneous and specific objection. Thus, he did not preserve this issue for appeal. See K.S.A. 60-404; *State v. Marler*, 290 Kan. 119, 122-23, 223 P.3d 804 (2010) (*specific* and timely objection required in order to preserve evidentiary issues for appeal).

However, if we assume that Rollins' objection referred to the foundation objection he made during Orrison's testimony, Rollins' argument still fails. Sharkey testified he was employed by Wall Ties, was familiar with the manufacturing process and shipping procedures, was familiar with Rollins and Rollins' job duties, and personally viewed the surveillance videos. This testimony adequately laid the foundation for Sharkey's testimony concerning the contents of the surveillance videos.

Consequently, substantial competent evidence supports the district court's decision to admit Orrison's and Sharkey's testimony concerning the contents of the surveillance videos.

## CUMULATIVE ERROR

Finally, Rollins argues that cumulative trial errors deprived him of a fair trial. This contention has no merit. This court applies the following test to a claim of cumulative trial errors:

"Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied [the defendant] a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant. *State v. Holmes*, 278 Kan. 603, 641, 102 P.3d 406 (2004)." *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006).

"Cumulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted.] One error is insufficient to support reversal under the cumulative effect rule. [Citation omitted.]" *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009).

Because we found no error, Rollins' cumulative error claim is without merit.

Affirmed.