NOT DESIGNATED FOR PUBLICATION

No. 119,423

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHANTRY MICHAEL MOON,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed June 14, 2019.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and STUTZMAN, S.J.

PER CURIAM: Chantry Michael Moon appeals his conviction by a jury in the
Sedgwick County District Court for felony theft. Moon contends the district court twice
committed error: first, when it admitted a surveillance video over his objection; and,
second, when it denied his request to require the State to pursue either a theory that he
"obtained" control over the victim's property or he "exerted" control over the property,
but not that he "obtained or exerted" control. He now argues that statute presents
alternative means of committing theft. After our review, we find no error by the district
court and we affirm.

1

FACTS AND PROCEDURAL BACKGROUND

About noon on June 17, 2016, Walter Keith discovered his flatbed trailer was no longer in his driveway where it had been when he went to bed the night before. After realizing the trailer was missing, Keith watched his home surveillance video. On that recording he saw someone he did not recognize pull the trailer by hand out of the driveway and across the street. Keith called the police and began looking around the neighborhood near his house to try to find his trailer.

Nearly two weeks later, Keith saw a trailer in a backyard a few blocks from his house. He thought this trailer was his because it had the same kind of double folding ramp as his trailer. Keith called the police and Officer Dustin Meier of the Wichita Police Department responded. Meier examined Keith's title for the trailer while his partner got permission from the homeowner, John Moore, to go into the backyard to take a closer look. Moon and Moore had been in the backyard when Meier arrived. Meier knew both men from previous contact.

Meier checked the trailer with the type of ramp that Keith had described to him, eventually locating and comparing the vehicle identification number (VIN) of the trailer against Keith's title. The VIN that Meier finally located matched that on Keith's title, so Meier removed a metal rack that had been placed on the trailer and released the trailer to Keith.

After leaving Moore's house, Meier went to Keith's house to view his home surveillance video. In Keith's video, Meier saw a person coming from the direction of a Quik Trip convenience store located next to Keith's home. That person appeared to be carrying a cup that he set on the trailer before pulling the trailer away. Meier continued the investigation by requesting surveillance videos from Quik Trip for the time matching Keith's recording.

2

Meier later watched surveillance videos from several cameras at the Quik Trip and identified Moon in the recordings. The videos showed Moon inside the Quik Trip before leaving the store and walking away in the direction of Keith's house. The store video showed Moon at the front door of the Quik Trip holding a drink with a black lid that appeared similar to the drink carried by the person who walked away with the trailer. In a recording from a camera generally covering the area of the gas pumps, looking north in the direction of Keith's house, Moon could be seen walking toward Keith's house, then going out of view. As that same recording continued, there appeared a "figure dragging what looks like a trailer" across the street.

The State charged Moon with theft, a felony because of prior convictions. In its presentation of evidence at Moon's trial, the State moved to admit the Quik Trip surveillance videos. Moon objected based on "authenticity" and "chain of custody"; because Meier did not produce the recordings or work for Quik Trip, Moon argued he could not provide a proper foundation for their admission. The district court sustained the objection and denied admission until the State provided "a better foundation." Meier then testified about the process for requesting the video surveillance recordings from Quik Trip and detailed the identifying information on the recorded disk he received from the company. Meier testified to the time and date stamp on the video, and he explained the different camera angles and how he analyzed them. He stated that after reviewing the videos he believed they were the ones he had requested from Quik Trip.

The State again moved to admit the video and Moon again objected, based on "authenticity, lack of personal knowledge, . . . confrontation clause." The district court admitted the video stating, "[b]oth through Mr. Keith and Officer Meier personal knowledge has been established and a further foundation has been established, as well."

During the jury instructions conference, Moon objected to the second element of the proposed theft instruction, which stated:

3

"The defendant is charged in Count 1 with theft. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

    1. Walter Keith was the owner of the property

    2. *The defendant obtained or exerted unauthorized control over the property.*

    3. The defendant intended to deprive Walter Keith permanently of the use or benefit of the property.

    4. This act occurred on or about the 17th day of June, 2016, in Sedgwick County, Kansas." (Emphasis added.)

Moon contended the State should elect its theory and argue either that Moon "obtained" or that he "exerted" unauthorized control over the trailer, but not have the choice of both. Moon argued that PIK Crim. 4th 58.010 (2017 Supp.) was drafted for the State to pick one of those two ways of committing the crime. The State responded that both the complaint and the statute, K.S.A. 2015 Supp. 21-5801(a)(1), used the same wording as element two of the proposed instruction, so it was appropriate for the instruction to mirror those documents.

Based on the statute, the complaint, and PIK Crim. 4th 58.010, the district court decided to leave the instruction as proposed, with "obtained or exerted." The court looked at the structure of the pattern instruction and it concluded that the two, which appear as— (obtained) (exerted)—were not meant to be separate. The court also commented that if there was evidence to support either "obtained" or "exerted," or both, the instruction could include either or both words.

The jury convicted Moon as charged. The crime was a severity level 9, nonperson felony and Moon had a category E criminal history, making probation the presumptive disposition. The district court sentenced Moon to the aggravated presumptive term of 11 months in prison and granted probation for a period of 12 months. As a condition of probation, the court ordered Moon to spend 60 days in jail, with work release authorized.

Moon timely appeals.

ANALYSIS

This is Moon's direct appeal and he submits two issues: (1) the district court committed reversible error by admitting the Quik Trip surveillance video recordings over Moon's objection; and (2) the district court committed reversible error by denying Moon's requested modification to the elements instruction that would have required the State to argue either that he "obtained" or "exerted" unauthorized control over Keith's trailer. He maintains those terms constitute alternative means and there was not sufficient evidence supporting both.

*Admission of surveillance videos*

*Preservation*

The State contends that Moon's objection to admission of the videos at trial is not the same one he now briefs to this court. Because of that, the State claims Moon's current version is both one that was not preserved at trial and is also an issue raised for the first time on appeal. The State argues that at trial Moon objected based on chain of custody and the facts that Meier did not work for Quik Trip and did not produce the video. When the district court sustained that objection, the State presented further testimony attempting to fill any gaps and get the videos admitted. But the State complains the objection now has "morphed" into one based on a lack of foundation for admission of the video because Meier was not present at the Quik Trip when the video was recorded, so he could not authenticate whether the video accurately and reliably portrayed the scene.

5

Moon, indeed, did state first that the chain of custody and the facts that Meier didn't work for Quik Trip or produce the video were the reasons for his objection. The full statement, however, was:

"I'd object based off authenticity, chain of command—or chain of custody. I mean, this officer's not the one that produced this video, this officer doesn't work with Quik Trip, I don't think he can lay the proper foundation. I don't think the proper foundation has been laid for these videos."

Moon's trial counsel touched on those other grounds for objection before bringing them under the umbrella objection that the State had not laid sufficient foundation for admitting the videos. The district court appears to have understood that formulation of the objection, ruling: "I'll sustain it until a better foundation is laid."

The State went on to question Meier about the process of requesting the video from Quik Trip, the labeling of the video, the importance of the time stamp on the video, the different camera angles of the video, and the content of the video, then renewed its request for admission. Moon again objected, stating:

"Your Honor, I would object. Again, I can lay out why, but I mean once again, authenticity, lack of personal knowledge, I mean, confrontation clause. I can go into detail if this [c]ourt would like, but as to why I believe those apply."

This time the district court admitted the video, finding: "Both through Mr. Keith and Officer Meier personal knowledge has been established and a further foundation has been established, as well."

Moon's objections were timely lodged and each time they were based on the sufficiency of the foundation the State had established. Moon's present argument about the district court's admission of the evidence may have expanded the phrasing of his

6

objection—now contending Meier was not at Quik Trip when the recording was made, so he could not say what scenes were accurately shown—but the substance of the objection is the same. We find the objection was properly preserved for appeal and does not present a new issue.

*Admissibility*

Generally, "[a] trial judge has considerable discretion in evidentiary rulings concerning foundation evidence. Judicial discretion cases are not reversed unless judicial discretion is abused." *City of Overland Park v. Cunningham*, 253 Kan. 765, 772, 861 P.2d 1316 (1993). "'Whether an adequate evidentiary foundation was laid is a question of fact for the trial court and largely rests in its discretion. So long as there is substantial competent evidence to support the finding, it will not be disturbed on appeal.' [Citations omitted.]" 253 Kan. at 773. Substantial competent evidence is "'"evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved."'" *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014) (quoting *In re D.D.M.*, 291 Kan. 883, 893, 249 P.3d 5 [2011]).

Although it was articulated in the pre-digital era, our Supreme Court detailed a principle that applies equally well now to digital video recording:

> "Still photographs and motion pictures, if shown to be a likeness of what they purport to represent, are, in the discretion of the trial court, admissible in evidence as aids to the trier of fact in arriving at an understanding of the evidence, the location or condition of an object, or the circumstances of an accident when any such matter is relevant." *Howard v. Stoughton*, 199 Kan. 787, Syl. ¶ 1, 433 P.2d 567 (1967).

When a challenge is made concerning admission of evidence, the starting point for our review is settled:

"Relevance is the threshold issue any time evidence is evaluated for admission into the record because all relevant evidence is admissible unless prohibited by statute. Evidence is relevant when it has any tendency in reason to prove any material fact. This definition incorporates two requirements—the evidence must be both material and probative. Evidence is material when the fact it supports is in dispute or an issue in the case and is probative when it has a logical tendency to prove a material fact. The question of materiality is reviewed de novo, and the assessment of probative value is reviewed under an abuse of discretion standard." *State v. Williams*, 303 Kan. 585, Syl. ¶ 1, 363 P.3d 1101 (2016).

In this case, Moon has declared "[r]elevance and materiality of the Quik Trip surveillance video is not a dispute in this matter." As Moon also notes, "[p]hotographs are generally admissible after proper foundation and identification if they accurately represent an object that is material and relevant to an issue in the case." *State v. Kemp*, 30 Kan. App. 2d 657, 662, 46 P.3d 31 (2002). The degree of accuracy required varies depending on the purpose of the photograph. *State v. Suing*, 210 Kan. 363, 365 502 P.2d 718 (1972). The person who lays the foundation for a photograph need not be the person who took the photograph. *State v. Pruitt*, 42 Kan. App. 2d 166, 176, 211 P.3d 166 (2009). And those testifying do not have to state specifically that the pictures are "fair representations" of what was portrayed. *Suing*, 210 Kan. at 365.

We are not persuaded by Moon's arguments that Meier could not provide the foundation needed to support admission of the Quik Trip video. Moon bases that argument on the facts that Meier was not present when the recording was made, he could not say exactly where the camera was placed, and "other specifics regarding the accuracy of the footage." Moon's contentions ignore both the nature of surveillance video and the State's purpose for introducing these particular videos.

An apparent virtue of surveillance cameras at a business like Quik Trip is that a continuous video record of the premises can be made by using *unattended* cameras, so

8

when an event of note occurs, a recording is then available. From one view, Moon could be seen at the door of the store, where Meier—who had testified he was familiar with Moon—could identify him. The accuracy and helpfulness for the jury of the next part of that recording was supported by Meier's testimony about the direction of the field of view in that segment, i.e. the direction of Keith's home next door to the north of the Quik Trip, the view of Moon walking in that direction, and the correspondence between the times of the Quik Trip and the Keith recordings. Meier's testimony showed he was sufficiently acquainted with the relationship between the Quik Trip premises and Keith's home, and with the times of the recordings, to testify about those facts.

Meier did not claim the video showed Moon pulling the trailer away from Keith's driveway. That remained a question for the jury to consider. But the clear purpose for the Quik Trip videos was to connect Moon's identified presence at the Quik Trip, followed by his departure on foot toward Keith's home, with a cup similar to that seen in Keith's recording that was made within that same timeframe. For those purposes, the district court could reasonably find Meier's testimony provided the required foundation for admission. We see no abuse of discretion.

*Alternative means*

Moon next contends the theft statute presented alternative means for committing that crime—either by obtaining or by exerting unauthorized control over property. The State's charging document used both terms. When discussing jury instructions, Moon asked the district court to require an election by the State to choose either obtaining or exerting as the theory the court would include in the elements instruction and the State would rely on in argument. The court denied the request and included both terms in its elements instruction. Moon argues his conviction should be reversed because the State failed to present evidence sufficient to support conviction on both of these alternative means. *State v. Williams*, 303 Kan. 750, 756, 368 P.3d 1065 (2016) (if jury instructed on

9

alternative means, there must be sufficient evidence to support each means charged to ensure unanimity).

Jury unanimity is statutorily required in Kansas. See K.S.A. 22-3421. *State v. Wright*, 290 Kan. 194, 201, 224 P.3d 1159 (2010). Whether the statutory right to jury unanimity has been violated is a question of law over which we have unlimited review. *State v. Kesselring*, 279 Kan. 671, 678, 112 P.3d 175 (2005).

When Moon was charged with theft, the statute defined that crime as:

"[A]ny of the following acts done with intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services: . . . Obtaining or exerting unauthorized control over property or services." K.S.A. 2015 Supp. 21-5801(a)(1).

Both the complaint and the jury instructions in this case used the statute's "obtaining or exerting" language.

Determining whether a statute sets out alternative means by which to violate it is typically a matter of statutory construction, which is a question subject to unlimited review. *Williams*, 303 Kan. at 757. This court has examined the theft statute many times and has specifically rejected Moon's argument that the "obtaining" and "exerting" language of K.S.A. 2015 Supp. 21-5801(a)(1) presents alternative means to commit the crime of theft.

In *State v. Rollins*, 46 Kan. App. 2d 17, 257 P.3d 839 (2011), this court found "no quantifiable difference" between the actions that constituted exerting and obtaining control, observing:

10

"One must necessarily obtain property one has exerted control over, and one must necessarily exert control over property one has obtained.

"Therefore, although stated in the disjunctive in K.S.A. 21-3701(a)(1) [now K.S.A. 21-5801(a)(1)], the terms are not different as they relate to the substantive elements of theft; they merely describe the same conduct. Consequently, this is not an alternative means case." 46 Kan. App. 2d at 22.

The Kansas Supreme Court denied review in *Rollins* and has yet to specifically address the issue for that crime, but this court has reaffirmed the essential holding from *Rollins* in several cases. See, e.g., *State v. Snover*, 48 Kan. App. 2d 298, Syl. ¶ 2, 287 P.3d 943 (2012); *State v. Ramsey*, No. 107,742, 2013 WL 5507284, at *4 (Kan. App. 2013) (unpublished opinion); *State v. Holt*, No. 106,711, 2013 WL 517657, at *11 (Kan. App. 2013) (unpublished opinion).

Moon acknowledges the *Rollins* and *Snover* decisions, but argues this court wrongly decided those cases. Moon asserts that those cases fail to explain how "obtaining" and "exerting" can mean the same thing when the Legislature joined them with the disjunctive "or," and when other types of theft use only "obtaining."

To our minds, *Rollins* succinctly and persuasively *did* explain how obtaining and exerting can mean the same thing, despite the "or" the Legislature placed between them. The two terms are functionally joined, since "[o]ne must necessarily obtain property one has exerted control over, and one must necessarily exert control over property one has obtained." 46 Kan. App. 2d at 22. Moon fails to expand on his point about other forms of theft that do not mention "exerting" or to support it beyond a mere conclusory statement, thereby abandoning that argument.

We agree with the reasoning on this issue from the previous decisions from this court. "Obtaining and exerting" do not present alternative means in K.S.A. 2015 Supp.

21-5801(a)(1) and there was no error by the district court in failing to require the State to elect one of those two terms as its theory of Moon's guilt.

Affirmed.